GEORGE D. OLIVER, ESQ. SBN 146321
LAW OFFICE OF GEORGE D. OLIVER
42 Hickory Road
Fairfax, CA 94930
San Rafael, CA.  94903
(415) 485-4430
(415) 485-1147
go@goliverlaw.com

Attorney for Plaintiff Mary Tagliaferri

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **MARY TAGLIAFERRI,** | ) **Case No 4:25-cv-02148-KAW** |
|               **Plaintiffs,** | ) **1st AMENDED COMPLAINT FOR** |
|    **vs.** | ) **DAMAGES BREACH OF CONTRACT** |
| | ) **TO PAY A COVERED CLAIM;** |
| | ) **BREACH OF THE IMPLIED** |
| **PALOMAR SPECIALTY INSURANCE COMPANY,** | ) **OBLIGATION OF GOOD FAITH AND** |
| **SEDGWICK CLAIMS MANAGEMENT SERVICES,** | ) **FAIR DEALING; FAILURE OR DELAY** |
| **DOES 1-99,** | ) **IN PAYMENT; BAD FAITH;** |
| | ) **INTENTIONAL INFLICTION OF** |
| | ) **EMOTIONAL DISTRESS; NEGLIGENT** |
| | **INFLICTION OF EMOTIONAL** |
|         **Defendants.** | **DISTRESS; INTENTIONAL** |
| | **MISREPRESENTATION; NEGLIGENT** |
| | **MISREPRESENTATION** |

**INTRODUCTION**

1. DR. MARY TAGLIAFERRI ("Plaintiff") is the owner and resident of the subject property located at 135 Tarry Road, San Anselmo, California, 94960.

2. Plaintiff is the beneficiary of a flood insurance policy covering the Property issued

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

by Defendant Palomar Specialty Insurance Company with claims administered through its agent, Sedgwick Management Services, Policy Number PPFLP-23-1487846-01.

3.    Palomar Specialty Insurance Company, ("Palomar") as a policyholder-owned insurer based in the State of California with members in California, is a citizen of, other places, California.

4.    At all times described in this Complaint, Defendant, "Palomar" was engaged in the business of Insurance in the State of California with its agent for service of process in California.

5.    Defendant Sedgwick Management Services ("Sedgwick") is an agent of Palomar, hired to administer Palomar claims and has an agent for the service of process in California.

6. The plaintiff is informed and believes that at all times mentioned in this complaint each and every defendant was the agent, servant, employee, and/or representative of each and every other defendant.

7.    Plaintiff is informed and believes that, in doing the thing complained of, each and every defendant was acting within the scope of that agency, service, employment, and/or representation, and each and every defendant is jointly and severally responsible and liable to Plaintiff for the damages alleged in the complaint. At all times described in this Complaint, Plaintiff was insured by "Palomar."

8.    Plaintiff is informed and believes that all acts of defendant, Sedgwick Claims

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

Management Services in the management of the "subject claim" were ratified by Palomar Specialty Insurance Company, whether acts by "Sedgwick" occurred in the scope of or exceeded Sedgwick's scope of agency.

9. All the acts described in this Complaint occurred in the State of California under California law and involve an insurance policy governed by California law.

## JURISDICTION

9. **Exclusive federal jurisdiction:** Claims for benefits under a standard flood insurance policy are within exclusive federal court jurisdiction. 42USC section 4072. The Defendants are doing business in California. And the terms of the subject insurance policy require filing a lawsuit in a Federal District Court

## VENUE

10. Venue is proper in this district under in the Northern District of California, under 28 U.S.C. section 1391 (b) (1) because Defendants are doing business in this district and venue is proper also under 28 U.S.C. section 1391 (b) (2) because the events giving rise to Mary Tagliaferri's claim occurred in this judicial district.

## DOE DEFENDANTS

11. Plaintiffs do not know the true names and capacities, whether individual, corporate, Associate, or otherwise of DEFENDANT Does 1 through 99 inclusive, and therefore sue these Defendants by such fictitious names under the substantive laws of the State of California.

## GENERAL ALLEGATIONS

12. Plaintiff purchased the Property, a single-family home in 2018. The Property was

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

originally constructed in 1976 by an owner/builder.

13. On or about January 20, 2023, a severe rainstorm struck Northern California causing heavy rainfall.

14. Plaintiff has made a flood claim under her Palomar Insurance policy for necessary repairs at her residence at 135 Tarry Road, San Anselmo as a result of water damage from the subject rainstorm.

15. Defendant Palomar through its agent, Sedgwick has paid plaintiff $86,423.06 for flood damage.  Plaintiff has submitted to Palomar and its agent detailed estimates for remedial repairs in the sum of $189,070.25 and request $50,000.00 for "loss of use" of her property.  Defendant has denied payment in excess of the monies paid claiming Plaintiff's alleged necessary repairs are an "improvement" to the property and not covered under the policy.

16. The plaintiff alleges she is still owed $152,647.19 of her claim and that she has submitted detailed justification for the needed repairs and that the "needed repairs" are not an improvement to the property, but rather the submitted repairs are necessary to stop intrusion of water into the residence from storms of the capacity of the January 20, 2023 subject storm that is the basis of Plaintiff's subject claim.

17. The Plaintiff further alleges that the Defendants have purposely misinterpreted the language of the subject Palomar Policy to deny Plaintiff's claim after intentionally misrepresenting to Plaintiff that the entire claim would be paid.

18. On July 5, 2024, Palomar through their agent Sedgwick's adjuster Ms. Reed states: "Your policy affords coverage to *return* damaged property to its *pre-damaged state*; it does

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

not allow for *improvements*. On August 6, 2024, Palomar responding to Plaintiff's justification for repairs states: The *improvements and betterment* that your contractor has listed and that you opted to have done were not covered under your policy.

19. The terms "improvements and betterment" are not terms used in the subject Palomar Policy. The Defendants have failed to provide Plaintiff the language or sections of the subject policy dealing with "improvements and betterment." Under page 24 of the subject policy states: "A-BUILDING PROPERTY is settled at "replacement cost" without deduction for depreciation. The policy states it will pay the necessary amount to repair or replace the damaged building.

20. The Plaintiff alleges that all claimed necessary repairs are reasonable and the costs associated with these repairs are within industry standards.

**Chronology of Requests for Payment, Patial Payment and Denial of Claim**

21. **January 20, 2023 – Date of Loss:**

The primary flooding event occurred at 135 Tarry Road. This incident caused significant property damage. Although additional water damage would later be noted, the flooding on this date is recognized as the initial loss event.

22. **January 30, 2023 – First Site Visit:**

John Weber, representing Sedgwick, visited the property along with Plaintiff's general contractor, Gordon Tindall, and claimant, Mary Tagliaferri. This visit was conducted to assess the extent of the damage and verify repair needs at the property.

1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION

23. **March 10, 2023 – Additional Water Damage Noted:**

On this date, further water damage was observed. Plaintiff contends that the damage is a continuation of the same flooding event from January 20, 2023, although the insurer treats it as a separate claim.

24. **March 27, 2023**

John Weber from Sedgwick, returns for a second onsite inspection. Gordon Tindall, Plaintiff's general contractor  and Plaintiff provide Weber with the justification for corrective repairs.

25. **April 25, 2023**

The Plaintiff sends an email to John Weber memorializing the prior two onsite inspections. GT Construction submits to Weber an estimate of needed repairs.

26. **April 26, 2023 – Initial Payment:**

A payment by Plaintiff of **$6,737.94** was made to GT Construction via Wells Fargo Check. This payment represents the beginning of the financial reimbursement process for the repairs related to the flooding damage.  This date represents the hiring of GT Construction, a licensed California General Contractor.

27. **May 15, 2023 – Initial Escalation:**

The first formal escalation occurred when Plaintiff sent a text message to John Weber. This message conveyed her growing concerns regarding the mishandling of her claim and the delayed pace at which repairs and reimbursements were proceeding.

28. **May 17, 2023**

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

Plaintiff has a telephone call with Weber to review the GT Construction estimate. John Weber has no concerns with either the scope or costs of the repairs identified by GT Construction.

29. **May 20, 2023**

Plaintiff sent an email to John Weber, Hal Shuman, Christian Herrera, Flo Harder and Duncan McClaren to inform Palomar and Sedgwick that she has major concerns regarding the delayed reimbursement for flood damage.

30. **June 2, 2023**

Plaintiff sent an email to John Weber, Hal Shuman, Christian Herrera, Flo Harder and Duncan McClaren to inform Palomar and Sedgwick that the partial reimbursement checks were insufficient to cover claimed damages and that she would not sign a release of settlement.

31. **June 30, 2023 – Independent Expert Inspection:**

Independent contractor and consultant, Onne Broek, visited the property to inspect the damage and review GT Construction's proposed repair work. Mr. Broek's inspection was a key step in verifying the repair estimates provided by Plaintiff's general contractor.

32. **November 10, 2023 – Second Payment:**

Plaintiff made a subsequent payment of **$23,019.00** to GT Construction. This payment contributed further toward the ongoing repairs and was part of the cumulative expenses being tracked.

33. **November 11, 2023**

Plaintiff sent an mail to John Weber, Hal Shuman, Christian Herrera, Flo Harder and Duncan McLaren stating that Gordon Tindall explained to John Weber, on two different onsite visits, that Gordon *"was unable to calculate the damages from the flooding until he*

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

*opened up the wall adjacent to the windows facing outside the house. Gordon has opened up the wall."*

34. **November 12, 2023**

Email from John Weber to Mary Tagliaferri, Hal Shuman, Christian Herrera, Flo Harder, Duncan McLaren and GT Construction. John Weber states: *"I am acknowledging receipt of your email.  We will review your new information and respond within the next few days."*

35. **November 22, 2023 – Third Site Visit:**

John Weber returned to the property for a third site visit and inspection. Accompanied again by general contractor Gordon Tindall and Plaintiff Mary Tagliaferri, this visit aimed to re-assess the damage and confirm the repair requirements. Weber asked Plaintiff to call Hal Shuman, which she did, but Hal Shuman never returned Plaintiff's call regarding outstanding payments and justification for the corrective repairs. Furthermore, Plaintiff stated she needed to be promptly paid by the Defendants. Plaintiff proposed to John Weber and Hal Shuman, in the presence of Gordon Tindall, different payment options for Defendants. Plaintiff proposed either a "pay as you go" plan where payments would be made to Plaintiff after receipt of each GT Construction invoice, or an "upfront payment" would be made for the entire GT Construction estimated total costs. Plaintiff did not receive a response from either John Weber or Hal Shuman regarding how and when she would be paid for the repairs.

36. **November 28, 2023**

Plaintiff sent an email to John Weber, Hal Shuman, Christian Herrera, Flo Harder, Duncan McLaren, Gordon Tindall and George Oliver stating that at the inspections, John

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

Weber was able to review the bedroom wall open to understand the scope of work. Second, John Weber took photos of the makeshift bedroom with mattresses on the floor of Plaintiff's home office where Dr. Tagliaferri works 100% of the time. Dr. Tagliaferri again states that at both the onsite inspection and via a voicemail message to Hal Shuman she inquired if Palomar wanted to 1) Pay as the work is completed, or 2) Pay Gordon Tindall's current estimate for the work with a final payment for any unpaid work. Plaintiff's email included the following: *"You asked me to call Hal Shuman to discuss payment arrangements. I called Hal when you and Gordon were on site, however, Hal has not called me back. As you have been my primary point of contact for my claim, please let me know how payments will be made for the work which Gordon estimates to be roughly $140,000. As you can imagine, this is a large capital outlay for me. I appreciate a prompt reply in writing with a clear answer."*

37. **December 15, 2023 – Third Payment:**

Plaintiff made a further payment of **$31,467.02** to GT Construction. This payment continued the reimbursement process and helped account for the repair expenses incurred due to the flooding damage.

38. **December 28, 2023**

Plaintiff sent an email to John Weber, Hal Shuman, Christian Herrera, Flo Harder, Duncan McLaren, Gordon Tindall and George Oliver with copies of cashed checks to Gordon Tindall along with Gordon Tindall's estimated costs for the complete repairs totaling $189,070.25.  Mary writes: *"Again, please let me know if you will be reimbursing me as I pay Gordon or if you will send a check for the total repairs with a future true up for any additional costs above and beyond Gordon's estimate."*

39. **January 13, 2024**

**1ˢᵗ AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

The independent expert, Onne Broek (who inspected the property on June 30, 2023), finalized his review and issued his report on this day. Mr. Broek's report confirmed that the proposed repairs and itemization of prospective costs from GT Construction were appropriate.

40. **January 17, 2024**

Plaintiff noted that she spoke with Mr. Sargent regarding her claim. This conversation helped set the stage for subsequent discussions about the repair estimates and payment issues.

41. **January 23, 2024**

Plaintiff sent an email to Bob Sargent, claims@plmr.com, John Weber, Laurie Foster, George Oliver and Gordan Tindall. The email memorializes a telephone conversation with Mary Tagliaferri and Bob Sargent. During the lengthy telephone conversation, Plaintiff explained to Bob Sargent the 12-month egregious history of bad faith between Sedwick and the corrective repairs required by GT Construction. Plaintiff and Bob Sargent spoke about the 3 onsite visits and inspections by John Weber and Gordon Tindall's efforts to bend over backwards to explain the corrective repairs to John Weber. In addition, Plaintiff explained that John Weber has never shared any concerns with the stated repairs in Gordon Tindall's repair estimates. Bob Sargent was very optimistic that Palomar could reach a swift and agreeable resolution with Plaintiff.

42. **February 1, 2024**

Plaintiff sent an email to Bob Sargent stating, *"It has been 16 days since my email request to you. Likewise, I have also left you a message. I kindly request that you promptly*

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

*reply in writing to my email."*

43. **March 6, 2024**

At approximately 12:07 PM, John Weber (Regional General Adjuster) sent an email approving the release of an additional settlement of **$45,795.36**. This figure was derived from an updated repair estimate of **$82,433.92** (contrasted with a previous estimate of **$36,638.56**). John Weber attached a revised Partial Proof of Loss form for Mary's completion.   Later, around 1:02 PM, Plaintiff sent a comprehensive email summarizing the history of the claim. In her message, Plaintiff recapped that on November 22, 2023, an inspection had taken place at her property (135 Tarry Road) with her contractor present, and she detailed the payments made to GT Construction:

– **April 26, 2023:** $6,737.94

– **November 10, 2023:** $23,019.00

– **December 15, 2023:** $31,467.02

– **January 17, 2024:** $25,200.00

– **Totaling:** $86,423.96

Plaintiff then calculated the outstanding amount due (approximately **$161,349.01**) and issued a demand for payment within a set timeframe.  At around 1:42 PM, Plaintiff confirmed her acceptance of a partial payment of roughly **$45,000** and indicated that a meeting between John Weber and contractor Gordon Tindall would follow to further review the repair estimates. At approximately 2:05 PM, John Weber followed up with a phone call to Gordon Tindall, reiterating the next steps and emphasizing that John Weber would incorporate his findings into an upcoming report. Shortly after, at about 1:48 PM, Robert

11 | P a g e

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

Sargent sent a brief acknowledgment thanking Mary Tagliaferri for her communication. Later in the afternoon (around 4:47 PM), Plaintiff sent another message retracting her earlier 10-day demand limit—indicating her willingness to extend the negotiation period despite her extreme frustrations.

This day is marked by intense, multifaceted communications among Plaintiff, John Weber, and Robert Sargent. Plaintiff's detailed email not only recapped past inspections and payments but also set forth her financial demand. Concurrently, John Weber's multiple emails provided approval for additional funds and outlined revised settlement terms. However, Defendants failed to consider the reports and estimates of damage claimed by either Gordon Tindall, GT Construction or Onne Broek, civil engineer.

44. **March 11, 2024**

John Weber sent an email at 2:22 PM requesting that contractor Gordon Tindall call him to discuss the details of the repairs and the cost submittals. This request was part of the ongoing efforts to reconcile the repair estimates and ensure all parties were aligned.

45**. March 12, 2024**

Early on Tuesday morning at 7:22 AM, Plaintiff provided Gordon's cell number to John Weber. This email helped facilitate direct communication between the adjuster and the contractor for further clarifications regarding the repair estimates.

46. **March 13, 2024**

At 12:13 PM, John Weber sent an email stating that he had spoken with contractor Gordon Tindall to review further details of the repair costs and that he would include his

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

findings in a forthcoming report to the claims handler.  Later, at 1:28 PM, Plaintiff forwarded additional documentation—specifically a letter and the consultant's CV—to John Weber, reinforcing her position and providing further evidence to support her repair estimate.

47**. April 4, 2024**

An email from Plaintiff to John Weber states: "*On March 13, 2024, you spoke to Gordan Tindall to review the attached estimate from GT Construction. Following our conference call last month with Bob Sargent, Gordon Tindall, you and me, it was the plan for you to review each line-item entry in Mr. Tindall's estimate. It is my understanding that you did not have any objections to Mr. Tindall's attached estimate. If there is an objection, please let me know which line item, description, rate and amount you are objecting to. I have also provided a letter from my independent construction expert, Onne Broek, who agrees with G Gordon's proposed repairs.*"

48. **April 26, 2024**

Plaintiff is informed that Robert Sargeant, who replaced Hal Shuman, has been replaced by Fachon R. Reed as the adjuster on her claim. Plaintiff informs Ms. Reed that Mr. Weber has conducted three separate inspections of the subject property and that he has been provided with a detailed list of necessary repairs compiled by Plaintiff's contractor. Plaintiff further informs Ms. Reed that Mr. Weber had no objections to the items outlined in the Contractor's estimate of damage and that Plaintiff also submitted reports from Onne Broek, an independent contractor and consultant engineer, hired by Plaintiff, confirming the needed repairs and the reasonableness of the cost estimates for the repairs. Plaintiff informs Ms. Reed that her contractor's estimate is $100,000.00 less than she has received for needed repairs and that Plaintiff expects prompt reimbursement so that repairs can be resumed. The plaintiff attached the estimate for repairs in the amount of $189,070.25. The Policy has a

**1ˢᵗ AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

$900,000.00 limit for flood damage. Plaintiff informs Ms. Reed that her claim is taking a lot of her personal time which is $500.00 per hour from her job at Nektar. The necessary repairs do not include the additional $50,000.00 claimed by Plaintiff for loss of use for over two years. Plaintiff had received a total of $86,423.06 from Palomar.

49. **May 3, 2024**

Early in the morning (around 8:05–8:24 AM), communications were exchanged between Plaintiff, Ms. Reed, and others regarding the claim. In these emails, the ***newly assigned third*** adjuster (Reed) noted that she had begun a preliminary review of Plaintiff's estimate from GT Construction. Simultaneously, Plaintiff reiterated her longstanding frustration by detailing the payment history and outstanding balances, and Plaintiff emphasized her demand for payment. Ms. Reed responds to Plaintiff on May 3, 2024, with the following:

> "*Good morning. I have been assigned your claim along with many others and am queueing them for review.  I have, however, completed a preliminary review of your contractor's estimate. Please request your contractor provide the state and/or local code upgrade requirements for the work that you have listed/completed in your contractor's estimate that you state has not been included the estimate provided by Sedgwick and you have not been paid for. Upon receipt of those ordinances, we will be better able to complete the handling of your claim. Also, you stated that John Weber met with your contractor and did not voice any objections to the estimate as written. Please note that John is the field adjuster. His responsibilities are to inspect the damages and provide the photos and estimate to the examiner for review/coverage decision. I am the examiner and will be making any*

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

*recommendations for coverage. Please direct all inquiries regarding payment coverage to me. Lastly, as I am aware that your claim has been open for more than a year now. As I have just been reassigned your loss, I hope that you will extend the time needed to adequately review your information, receive and review the requested documentation from your contractor and report back to you. I will be out of the office starting 5/8/24 for a medical procedure and will return the next week. If any information is received in our office after Monday, 5/6/24, I will review it upon my return. Also, for clarification, I am female as you addressed your correspondence to Mr. Reed. I look forward to working with you to achieve resolution. Regards,"*

50. **May 15, 2024**

At 12:52 PM, Plaintiff sent a strongly worded email giving Sedwick a 30-day deadline to provide full payment for the repairs. In her message, she warned that if the payment was not received within that timeframe, she would initiate legal proceedings for lack of good faith—and she also stated that she would seek recovery for her loss of use and her time at a rate of $500 per hour.

51. **June 6, 2024**

At 8:48 AM, Plaintiff sent an email to Fachon R. Reed documenting a recent phone call. In her message, Plaintiff expressed frustration at not being informed about a call between John Weber and an unnamed third party (who had spoken directly with her contractor, Gordon Tindall). Mary requested the name and title of that individual, and she also reiterated the need for John Weber to provide a detailed list of the repairs he deemed non-reimbursable. This communication underscores her serious concerns about transparency and the delays in

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

moving forward with repairs. Ms. Tagliaferri also stated: "*Despite a conversation that took place roughly 3 months ago between Mr. Tindall and Mr. Weber regarding the estimated costs listed in the January 2024 estimate, we never received Mr. Weber's list of repairs which were not reimbursable per his assessment…. Finally, I would appreciate clarification on whether payment for the estimated repairs, totaling approximately $100,000, will be forthcoming. The 30-day offer I extended to you terminates on June 14, 2024. If you do not plan to reimburse me for the necessary repairs repeatedly explained by Mr. Tindall both in person and via phone, please provide details on the process for service address.*"

52. **June 19, 2024**

At 4:54 PM, Plaintiff sent an email requesting the address for process service for a legal complaint. This request reflects her escalating frustration with the unresolved issues and ongoing delays in the claim settlement.

53. **June 20, 2024**

At 6:51 AM, Ms. Reed (the adjuster) sent an email noting that certain information (regarding lawsuit requirements) could be found in the policy (page 27), and she outlined the conditions under which a lawsuit could be filed against the insurer. Shortly after, at 7:03 AM, Plaintiff sent another email in which she questioned whether the estimated repairs would be covered by her policy, emphasizing that the estimates had been sent to the insurer approximately six months earlier. This email further stressed the urgency of resolving the outstanding payment issue, as delays had increased her loss of use claim for the failure to be able to use her daughter's bedroom for a year and a half.

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

54. **July 5, 2024**

At 11:22 AM, Ms. Reed sent an email to Plaintiff outlining details of the coverage decision. In this message, she noted that her policy dictated a $2,000 deductible for both building and personal property, and she mentioned an instance of overpayment related to the building property damage. Ms. Reed regarding Palomar's position on coverage the following:

*"Your policy affords coverage to return damaged property to its pre-damaged state; it does not allow for improvements. Please read the attached letter and review the estimate in their entirety."*

55. **July 6, 2024**

At 12:21 PM, Plaintiff sent an email to Ms. Reed (and others) requesting detailed contact information (name, title, and dates of involvement) for every individual at Palomar and Sedwick who had been involved in her claim. This request aimed to ensure full transparency regarding who had reviewed her case.

56. **July 26, 2024**

At 5:49 PM, Flo Harder, Palomar's claims relationship specialist, reached out via email. Ms. Harder introduced herself and expressed interest in discussing Plaintiff's concerns about her claim with both the handling adjuster and his manager. Plaintiff responded: *"I am very concerned with the lack of good faith. Likewise, there was no offer for my loss of use. Please do have someone from Palomar reach out to me as soon as possible because this has become a time sensitive matter for me."*

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

57. **July 29, 2024**

*"Hi Flo, I am meeting with an attorney later this afternoon to file a lawsuit. Please feel free to contact me on my cell. Best, Mary."*

58. **July 30, 2024**

At 2:03 PM, Plaintiff sent an email providing several time slots (ranging from early morning to late afternoon) on the following days. In this email, Plaintiff offered her availability for a call with the handling adjuster and manager to discuss her claim in further detail. Flo Harder, Claims Relationship Specialist for Palomar responded to Plaintiff stating: "*While we realize that there is a difference between your contractors estimate and the Sedgwick; during the conference call on May 14,2024 with the handling adjuster, field adjuster, your contractor, and you; there was discussion surrounding the estimate that contained corrective repairs and betterment. We have asked for supporting documentation from your contractor that supports either code upgrades – which the adjuster will review if provided by your contractor. Please have your contractor provide the code upgrade information and any other information that he has to support the difference please provide this for the adjuster to review. Thank you for your call and your patience – and if you have any additional questions, please feel free to include claims@plmr.com and Richard Cisak with Sedgwick (all on the address line above).*

59**. August 6, 2024**

In response to Plaintiff submitting to Defendants a detailed justification estimate from GT Construction for the necessary repairs to prevent future flooding and submitting financials supporting her "loss of use" of the subject property, Teresa Urban, Vice President

18 | P a g e

**1**st **AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

for Palomar Property Claims emailed Plaintiff a denial of Plaintiff's claim, stating:

> *"Thank you for your detailed email and the opportunity to review your claim for date of loss 01/24/2023.  I have met with the handling adjuster, field adjuster, John Weber, and team manager Richard Cisak to discuss your email on this flood claim.  It is our position that we have paid for the damages caused by the loss in the amount of $89,171.86 Building and $6667.32 contents. The improvements and betterment that your contractor has listed and that you opted to have done were not covered under your policy. If you have additional information to support that the upgrades were code requirements – please submit those for consideration."*

### FIRST CAUSE OF ACTION
### (Breach of Contractual Duty to Pay a Covered Claim)

60. Plaintiff hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

61. A contract of insurance existed between "Palomar" and the Plaintiff, namely the Policy. The plaintiff notified Defendant Palomar through their administrator agent Defendant "Sedgwick" of the loss covered by the Palomar Policy and the amount of the covered loss that Defendants failed to pay.

62. Defendants Palomar and Sedgwick failed to fulfill their contractual obligations by inadequately compensating the Plaintiff under the Policy for the damage to her property. This failure occurred despite Plaintiff's repeated submission of her claim for sufficient proceeds to cover the damage and recovery of loss under the Policy.

63. Defendants' conduct constitutes a breach of the insurance contract between Plaintiff and Defendants. Palomar is in Breach of the Contractual Duty to Pay a Covered Claim by

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

paying only $86,423.06 of a claim for $189,070.25 and for failing to pay the $50,000.00 policy limit for the claimed "loss of use" of Plaintiff's property. Defendants failed to uphold the terms of the provided policy which states: "We will pay for direct physical loss by or from flood to your insured property if you: 1. Have paid the correct premium; 2. Comply with all terms and conditions of this policy and 3. Have furnished accurate information and statements."

64. The Defendants have also breached the duty to pay by failing to provide for "Loss of Use" damages under the Palomar Policy Section E Flood Coverage which states: "If a "flood" loss covered by this policy makes your "dwelling" where you reside unfit to live in, we will pay up to $50,000.00 for Flood Coverage E – Loss of Use. This limit applies on an aggregate per loss basis for Additional Living Expense, Fair Rental Value, and Civil Authority Prohibits Use. The Plaintiff has provided financial information to the Defendants regarding her loss of use, but the Defendants have failed to respond to the Plaintiff's demand.

65. The Defendants' interpretation of the contract and conduct in failing to pay Plaintiff's entire claim is unreasonable. Defendants allege that Plaintiff's estimate for losses involve *improvements* not covered by the policy. Sedgwick adjuster, Fachon R. Reed, states in an email: "Your policy affords coverage ***to return damaged property*** to its pre-damaged state***; it does not allow for improvements.*** Please read the attached letter and review the estimate in their entirety."

66. The Plaintiff alleges that the subject policy does not contain language that allows Defendants to deny a claim because of prohibited *improvements*. The actual language of the

**1ˢᵗ AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

Policy states: "Coverage under FLOOD COVERAGE A- BUILDING PROPERTY is settled at "*replacement cost*" without deduction for depreciation.

67. The Plaintiff alleges that she is seeking reasonable funds available under the policy to repair her home in a manner to prevent water intrusion from future storms. She further alleges that these repairs are not *"improvements"* but necessary replacement repairs to return the subject property back to being safe from water intrusion. The plaintiff contractor GT Construction has submitted invoices and estimates outlining the necessity of the repairs and reasonable costs to effectuate this.

68. The Plaintiff further alleges that according to industry standards, $50,000.00 for the loss of use over a two-year period of the water damaged areas of her residence is also reasonable. The Defendants have breached the duty to pay by failing to provide for "Loss of Use" damages under the Palomar Policy Section E Flood Coverage which states: "If a "flood" loss covered by this policy makes your "dwelling" where you reside unfit to live in, we will pay up to $50,000.00 for Flood Coverage E – Loss of Use. This limit applies on an aggregate per loss basis for Additional Living Expense, Fair Rental Value, and Civil Authority Prohibits Use. The Plaintiff has provided financial information to the Defendants regarding her loss of use, but the Defendants have failed to respond to the Plaintiff's demand.

69. As a result of the breach of contract, Plaintiff seeks damages for economic, and non-economic losses. In addition to her direct economic losses, the Plaintiff seeks damages for emotional distress as the result of the mental suffering, anxiety, humiliation and enjoyment of life she has suffered living in an unfinished construction zone as her home. The Plaintiff

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

purchased flood insurance for her mental and emotional well-being for peace of mind and security seeking protection against calamity. The breach of contract and failure to pay Plaintiff for flood damage has affected her comfort, happiness and personal welfare. Dr. Mary Tagliaferri claims that Palomar Specialty Insurance Company and their administrator of claims, Sedwick Claims Management Services, conduct related to the subject claim caused her to suffer severe emotional distress. The Plaintiff alleges that Defendants' conduct was outrageous by delaying and ultimately denying part of Plaintiff's flood loss claim. Plaintiff alleges a breach of the policy contract, a breach of the implied obligation of good faith and fair dealing and bad faith in failing to reasonably investigate Plaintiff's claim for flood damage. The Defendants' outrageous conduct on breaching Plaintiff's contract with Palomar was with reckless disregard of the probability that Plaintiff would suffer emotional distress. The outrageous, reckless conduct of Defendants was a substantial factor in causing Plaintiff's severe emotional distress. Defendants acted outrageously and recklessly in providing adjuster after adjuster to delay paying the Plaintiff a reasonable amount of funds to complete her remedial project. These delay tactics and false narratives by "Palomar" and by "Sedgwick" were an attempt to deny the benefits of the policy, which aggravated an already stressful situation. With every new adjuster, the plaintiff had to begin the claim process anew which required educating the new adjuster to the details of the claim and providing multiple documents that had been provided to the prior adjuster with detailed accounting and work orders. Restarting the claim process resulted in the plaintiff spending an inordinate amount of time with a new adjuster at the cost of spending time with family and friends, with the ultimate result after significant delay the denial of most of her claim.

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

Changing adjusters created severe emotional distress including desperate frustration as prior adjusters, employees and agents of "Sedgwick" and "Palomar" informed the plaintiff that plaintiff would be reimbursed for her loss so that she could continue and finish the construction needed to remedy the leaks causing the water damage to her property. Instead, Defendants and each of them provided misrepresentations, new adjusters and delayed and ultimately denied Plaintiff's subject claim. Such outrageous actions by Defendants and each of them caused plaintiff to suffer severe anxiety, as she had lost the use of her daughter's bedroom and living quarters for several years. The delay and denial of the benefits under the policy were the direct cause of the Plaintiff giving up her privacy and peace of mind. The plaintiff was now required to give up her privacy by sharing an adjacent bedroom and bathroom with her daughter. The plaintiff's daughter has now refused to return home from college until the construction is finished, so that she has access her own bedroom and bathroom separate from her mother. This has resulted in the plaintiff suffering sadness and isolation as she feels she has ultimately failed her daughter's reasonable request for a normal life.  The plaintiff has also suffered severe anxiety and nervousness in having to pay out of pocket for the needed construction to remedy the cause of the water damage. The plaintiff has had to sell assets and pay taxes on those sales to fund the ongoing construction.  The out of pocket costs associated with the remedial repairs have resulted in fewer vacations for the plaintiff and her family. The plaintiff has had to store clothes and furniture in the garage with most of these items being destroyed by the elements.  The above worries have caused the plaintiff to suffer sleep deprivation as she not only worries that the work will never be finished for her to live a normal life but also she will be exposed to future storms and water

intrusion into her home.  Because of the water damage, and condition of the damaged area, rats and mice infected the damaged area causing plaintiff to hire rodent control.  Plaintiff further alleges that Defendant Palomar Specialty Insurance at all times ratified the outrageous conduct whether in or out of the scope of agency of their agent/administrator Sedgwick Claims Management Services, and the conduct of "Sedgwick" and "Palomar" was a substantial factor in causing Plaintiff's severe emotional distress.

### SECOND CAUSE OF
### (Breach of the Implied Obligation of Good Faith and Fair Dealing)

70. Plaintiff hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

71. Plaintiff Mary Tagliaferri claims that Defendants Palomar and Sedgwick breached the obligation of good faith and fair dealing by failing to pay and by delaying payment of benefits due under the subject insurance policy. The Plaintiff suffered a loss covered under an insurance policy with Defendant "Palomar" and administered under Defendant agent "Sedgwick." The Plaintiff alleges that Defendants were timely notified of Plaintiff's loss due to flood damage. Following notification Defendants and each of them unreasonably failed to investigate, delayed payment and ultimately denied the majority of Plaintiff's claim, and policy benefits. Plaintiff was harmed by such actions and the Defendants' failure to investigate, delay payment and ultimately deny the majority of Plaintiff's claim was a substantial factor in causing Dr. Mary Tagliaferri's harm. The insurer had no proper cause for its conduct and acted "unreasonably" in failing to investigate, pay policy benefits and in delaying the benefits paid.

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

72.  Plaintiff provided a detailed analysis of every repair and proposed repair and the reasons why such repairs were essential to prevent future flooding and why the needed repairs were not "code upgrades" or "betterment." The Plaintiff on multiple occasions requested the same analysis by Defendants so that a determination could be made as to what repairs the Plaintiff and Defendant agreed or disagreed were covered by the subject policy. The Defendants failed to provide such an analysis, delayed payment and failed to pay Plaintiff's entire claim in breach of the implied obligation of good faith and fair dealing. The failure of Defendants to do a line analysis, on the GT Construction estimate as requested by Mr. Bob Sargeant, resulted in Plaintiff not being able to dispute allegations that certain repairs were not covered by the policy. Defendants conduct or failure to promptly act in completing the requested line analysis is a breach of the obligation of "good faith" and "fair dealing."

73. As a result of the breach of implied obligation of good faith and fair dealing, the Plaintiff seeks damages for her economic, and non-economic losses. In addition to her direct economic losses, the Plaintiff seeks damages for emotional distress as the result of the mental suffering, anxiety, humiliation and enjoyment of life she has suffered living in an unfinished construction zone as her home. The Plaintiff purchased flood insurance for her mental and emotional well-being for peace of mind and security seeking protection against calamity. The breach of the implied obligation of good faith and fair dealing for failure to pay Plaintiff for benefits under the contract has affected her comfort, happiness and personal welfare. Dr. Mary Tagliaferri claims that Palomar Specialty Insurance Company and their administrator of claims, Sedwick Claims Management Services conduct caused her to suffer severe

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

emotional distress. The Plaintiff alleges that Defendants' conduct was outrageous by their failure to adequately investigate, by delaying payment and ultimately denying part of Plaintiff's flood loss claim, a breach of the policy contract, a breach of the implied obligation of good faith and fair dealing and Defendants and each of their conduct was done in "bad faith." The Defendants' outrageous conduct was with reckless disregard of the probability that Plaintiff would suffer emotional distress. The outrageous, reckless conduct of Defendants was a substantial factor in causing Plaintiff's severe emotional distress. Defendants acted outrageously and recklessly in providing adjuster after adjuster to delay paying the Plaintiff a reasonable amount of funds to complete her remedial project. These delay tactics and false narratives were an attempt to deny the benefits of the subject policy, which aggravated an already stressful situation. With every new adjuster, the plaintiff had to begin the claim process anew which required educating the new adjuster to the details of the claim and providing multiple documents that had been provided to the prior adjuster including but not limited to providing detailed accounting and work orders. Restarting the claim process resulted in the plaintiff spending an inordinate amount of time with a new adjuster at the cost of spending time with family and friends, with the ultimate result of the denial of most of her claim.

The Defendants change of adjusters created severe emotional distress including desperate frustration as prior adjusters were replaced after informing the Plaintiff that Plaintiff would be reimbursed for her damage needed to remedy the leaks causing water damage to her property. The replacement of the adjusters caused undue delay in the payment of funds, complications and delay with the investigation and ultimately the denial of her

claim, causing Plaintiff to suffer severe anxiety, with the use of her daughter's bedroom and living quarters. The failure to investigate accompanied by delay in the payment of funds and denial of the benefits under the policy were the direct cause of the Plaintiff giving up her privacy and peace of mind. The Plaintiff was now required to give up her privacy and the privacy of her daughter by both mother and daughter sharing an adjacent bedroom and bathroom.  The Plaintiff's daughter has now refused to return home from college until the construction is finished, so that she has her own bedroom and bathroom separate from her mother. This has resulted in the plaintiff suffering sadness and isolation as she feels she has ultimately failed her daughter's reasonable request for a normal life.  The Plaintiff has also suffered severe anxiety and nervousness in having to pay out of pocket for the construction repairs needed to remedy the cause of the water damage. The plaintiff has had to sell assets and pay taxes on those sales to fund the ongoing construction.  The out of pocket costs associated with the remedial repairs have resulted in fewer vacations for the Plaintiff and her family. The plaintiff has had to store clothes and furniture in the garage with  most of these items destroyed by the elements.  The above worries have caused the plaintiff to suffer sleep deprivation. The plaintiff also worried that a new storm would cause repeated damage and that she would have to fend for herself as the Defendants would not help with the necessary remedial repairs.  Because of the water damage, and condition of the damaged area, rats and mice infected the damaged area causing plaintiff to hire rodent control.  Plaintiff further alleges that Defendant Palomar Specialty Insurance at all times ratified  the outrageous conduct of their agent administrator Sedgwick Claims Management Services in the

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

administration of the subject claim and the conduct of "Sedgwick" and "Palomar" was a substantial factor in causing Plaintiff's severe emotional distress.

74.   Under California Civil Code section 3294 there is clear and convincing evidence that the Defendants are guilty of oppression, fraud or malice in failing to investigate Plaintiff's claim for losses suffered and for unreasonably delaying and failing to pay for Plaintiff's losses by falsely interpreting the language of the policy to assert that the claimed repairs are an "improvement and betterment" not covered under the policy. The Defendants intentionally made false statements that the full claim for repairs would be paid so that the remedial repairs could be completed. The Defendants' failure to investigate the claim, delaying payment of funds and ultimately denying portion of Plaintiff's claim were made with malice, intent and reckless indifference to the harm caused to Plaintiff. The failure to investigate the claim, and the delay and the outrageous denial of Plaintiff's claim is a Breach of the Implied Obligation of Good Faith and Fair Dealing.  Defendant "Palomar" at all times ratified all aspects of the management of the subject claim by their agent/administrator "Sedgwick."  The Plaintiff hereby requests punitive damages.

### THIRD CAUSE OF ACTION
### (Bad Faith – Failure to Properly Investigate Claim)

75. Plaintiff hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

76. Plaintiff Dr. Mary Tagliaferri claims that Defendants and each of them acted unreasonably, that is, without proper cause, by failing to conduct a proper investigation

**1ˢᵗ AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

of her claim. The Defendants interpretation of the language of the policy which led to its denial of Plaintiff's claim was unreasonable. Plaintiff suffered a loss covered under her insurance policy issued by Defendant "Palomar" and administered by Defendant agent "Sedgwick." Plaintiff properly presented a claim to Defendants for compensation for the water damage to her premises, losses but Defendants failed to conduct a full, fair, prompt, and thorough investigation of all the bases of Plaintiff's claim. Defendants' failure to properly investigate the claim was a substantial factor in causing Plaintiff, Dr. Mary Tagliaferri's harm. Defendants failed in their duty to diligently search for and consider evidence that supported coverage of the claimed loss. In "Bad Faith," Defendants failed to promptly provide a line-by-line analysis of disputed repairs and summarily delayed and denied Plaintiff the benefits under her policy.

77. As a result of Defendants' "Bad Faith", in investigating, delaying payment of funds and denying the majority of Plaintiff's claim, Plaintiff seeks damages for her economic, and non-economic losses. In addition to her direct economic losses, the Plaintiff seeks damage for emotional distress as the result of the mental suffering, anxiety, humiliation and enjoyment of life she has suffered living in an unfinished construction zone as her home. The Plaintiff purchased flood insurance for her mental and emotional well-being for peace of mind and security seeking protection against calamity. The Defendants acted in "Bad Faith" in Failing to adequately investigate Plaintiff's claim and provide her the benefits under the policy which affected her comfort, happiness and personal welfare. Dr. Mary Tagliaferri claims that Palomar Specialty Insurance Company and their administrator of claims, Sedwick Claims Management Services conduct caused her to suffer severe emotional distress. The

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

Plaintiff alleges that Defendants' conduct was outrageous by not investigating, by delaying and ultimately denying part of Plaintiff's flood loss claim, which were all a breach of the policy contract, a breaching the implied obligation of good faith and fair dealing and acting in "bad faith" in failing to reasonably investigate and timely pay Plaintiff's claim for flood damage. The Defendants' outrageous conduct was with reckless disregard of the probability that Plaintiff would suffer emotional distress. The outrageous, reckless conduct of Defendants was a substantial factor in causing Plaintiff's severe emotional distress. Defendants acted outrageously and recklessly in providing adjuster after adjuster whose purpose was to delay paying the Plaintiff a reasonable amount to complete her remedial project covered under the policy. These delay tactics and false narratives were an attempt to deny the benefits of the policy, which aggravated an already stressful situation. With every new adjuster, the plaintiff had to begin the claim process anew which required educating the new adjuster to the details of the claim and providing the new adjuster multiple documents that had been provided to the prior adjuster containing a detailed accounting with work orders and invoices.  Restarting the claim process resulted in the plaintiff spending an inordinate amount of time with a new adjuster at the cost of spending time with family and friends.

Defendants outrageous conduct in changing adjusters created severe emotional distress for Plaintiff, including desperate frustration as prior adjusters falsely informed the plaintiff that she would be reimbursed for her claimed loss so that she could continue the construction needed to remedy the leaks causing water damage to her property. As a result of the delay and denial of her claim, the Plaintiff  lost the use of her daughter's bedroom and

30 | P a g e

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

living quarters. The delay and denial of the benefits under the policy were the direct cause of the Plaintiff giving up her privacy and peace of mind. The plaintiff was now required to give up her privacy by sharing an adjacent bedroom and bathroom with her daughter. The plaintiff's daughter has now refused to return home from college until the construction is finished, so that she has her own bedroom and bathroom separate from her mother.  The loss of use of Plaintiff's daughter's bedroom and bathroom has resulted in the plaintiff suffering sadness and isolation as she feels she has ultimately failed her daughter's reasonable request for a normal life.  The plaintiff has also suffered severe anxiety and nervousness in having to pay out of pocket for the needed construction to remedy the cause of the water damage. The plaintiff has had to sell assets and pay taxes on those sales to fund the ongoing construction. The out of pocket costs associated with the remedial repairs have resulted in fewer vacations for the plaintiff and her family. The plaintiff has had to store clothes and furniture in the garage with most of these items being destroyed from the elements.  The above worries have caused the plaintiff to suffer sleep deprivation.  She also ruminates on the fact that a new storm would cause repeated damage and that she would have to fend for herself as the defendants would not help with the necessary remedial repairs.  Because of the water damage, and condition of the damaged area, rats and mice infected the damaged area causing plaintiff to hire rodent control.  Plaintiff further alleges that Defendant Palomar Specialty Insurance at all times ratified  the outrageous conduct of their agent/administrator Sedgwick Claims Management Services in the administration of the subject claim and the conduct of "Sedgwick" and "Palomar" was a substantial factor in causing Plaintiff's severe emotional distress.

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

78.  Under California Civil Code section 3294 there is clear and convincing evidence that the Defendants are guilty of oppression, fraud or malice in failing to investigate Plaintiff's subject claim for losses suffered and for unreasonably delaying,  and failing to pay for Plaintiff's losses by falsely interpreting the language of the policy to assert that the claimed repairs are an "improvement and betterment" not covered under the policy. The Defendants intentionally made false statements that the full claim for repairs would be paid so that the remedial repairs could be completed timely.  The failure to investigate, the delay in payment and ultimately the denying the majority portion of Plaintiff's claim were made with malice, intent and reckless indifference to the harm caused to Plaintiff. The failure to investigate delay and denial of Plaintiff's claim is a Breach of the Implied Obligation of Good Faith and Fair Dealing. Defendant "Palomar" at all times ratified all aspects of the management of the subject claim by their agent/administrator "Sedgwick."  The Plaintiff hereby requests punitive damages

**FOURTH CAUSE OF ACTION**
**(Intentional Infliction of Emotional Distress)**

79. Plaintiff hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

80. Dr. Mary Tagliaferri claims that Palomar Specialty Insurance Company and their administrator of claims, Sedwick Claims Management Services conduct caused her to suffer severe emotional distress. The Plaintiff alleges that Defendants' conduct was outrageous by delaying and ultimately denying part of Plaintiff's flood loss claim, a breach of the policy contract, by breaching the implied obligation of good faith and fair dealing and committing bad faith in failing to reasonably investigate Plaintiff's claim for flood damage. The

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

Defendants' outrageous conduct was with reckless disregard of the probability that Plaintiff would suffer emotional distress. The outrageous, reckless conduct of Defendants was a substantial factor in causing Plaintiff's severe emotional distress. Defendants acted outrageously and recklessly in providing adjuster after adjuster to delay paying the Plaintiff a reasonable amount of funds to complete her remedial project. These delay tactics and false narratives were an attempt to not provide the benefits of the policy, which aggravated an already stressful situation. With every new adjuster, the plaintiff had to begin the claim process anew which required educating the new adjuster to the details of the claim and providing multiple documents that had been provided to the prior adjuster with detailed accounting and work orders. Restarting the claim process resulted in the plaintiff spending an inordinate amount of time with a new adjuster at the cost of spending time with family and friends, with the ultimate result of the denial of most of her claim.

Changing adjusters created severe emotional distress including desperate frustration as prior adjusters informed the plaintiff that plaintiff would be reimbursed for her loss so that she could continue the construction needed to remedy the leaks causing water damage to her property. Instead, the delay and ultimate denial of her claim caused plaintiff to suffer severe anxiety, as she had lost the use of her daughter's bedroom and living quarters. The delay and denial of the benefits under the policy were the direct cause of the Plaintiff giving up her privacy and peace of mind. The plaintiff was now required to give up her privacy by sharing an adjacent bedroom and bathroom with her daughter. The plaintiff's daughter has now refused to return home from college until the construction is finished, so that she has her own bedroom and bathroom separate from her mother. This has resulted in the plaintiff suffering

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

sadness and isolation as she feels she has ultimately failed her daughter's reasonable request for a normal life.  The plaintiff has also suffered severe anxiety and nervousness in having to pay out of pocket for the needed construction to remedy the cause of the water damage. The plaintiff has had to sell assets and pay taxes on those sales to fund the ongoing construction. The out of pocket costs associated with the remedial repairs have resulted in fewer vacations for the plaintiff and her family. The plaintiff has had to store clothes and furniture in the garage with the outcome that most of these items are destroyed from the elements.  The above worries have caused the plaintiff to suffer sleep deprivation. The plaintiff also worried that a new storm would cause repeated damage and that she would have to fend for herself as the defendants would not help with the necessary remedial repairs.  Because of the water damage, and condition of the damaged area, rats and mice infected the damaged area causing plaintiff to hire rodent control.  Plaintiff further alleges that Defendant Palomar Specialty Insurance at all times ratified  the outrageous conduct of their agent administrator Sedgwick Claims Management Services in the administration of the subject claim and the conduct of Sedgwick and Palomar was a substantial factor in causing Plaintiff's severe emotional distress.

81.   Under California Civil Code section 3294 there is clear and convincing evidence that the Defendants are guilty of oppression, fraud or malice in failing to investigate Plaintiff's claim for losses suffered and for unreasonably delaying and failing to pay for Plaintiff's losses by falsely interpreting the language of the policy to assert that the claimed repairs are an "improvement and betterment" not covered under the policy. The Defendants intentionally made false statements that the full claim for repairs would be paid so that the remedial repairs

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

could be completed.  Delaying and ultimately denying portion of Plaintiff's claim were made with malice, intent and reckless indifference to the harm caused to Plaintiff. The delay and denial of Plaintiff's claim is a Breach of the Implied Obligation of Good Faith and Fair Dealing. Defendant "Palomar" at all times ratified all aspects of the management of the subject claim by their agent/administrator "Sedgwick."   The Plaintiff hereby requests punitive damages

### FIFTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)

82. Plaintiff hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

83. Plaintiff Dr. Mary Tagliaferri claims that Defendants Palomar Specialty Insurance Company and their administrator of claims, Sedwick Claims Management Services conduct, caused her to suffer serious emotional distress. Plaintiff alleges that Defendants were negligent in the administration of her claim and that she suffered serious emotional distress as the result of the negligent administration of her claim and Defendants' negligence was a substantial factor in causing Plaintiff's serious emotional distress including suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame such that a reasonable person would be unable to cope with it.  The defendants provided adjuster after adjuster, using delay tactics and false narratives in an attempt to not provide the benefits of the policy aggravating an already stressful situation. With every new adjuster, the plaintiff had to begin the claim process anew which required educating the new adjuster to the details of the claim and providing multiple documents that had been provided to the prior adjuster with detailed accounting and work orders. Restarting the claim process resulted in the

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

plaintiff spending an inordinate amount of time with a new adjuster at the cost of spending time with family and friends.

Changing adjusters created severe emotional distress with desperate frustration as prior adjusters informed the plaintiff that she would be reimbursed for her loss so that she could continue the construction needed to remedy the leaks causing water damage to her property. The plaintiff suffered severe anxiety with the loss of use of her daughter's bedroom because of the need for plaintiff and her daughter to now share living quarters. The plaintiff's daughter has refused to return home from college until the construction is finished, and she has her own bedroom and bathroom separate from her mother. This has resulted in sadness and isolation suffered by the plaintiff.  The plaintiff has also suffered severe anxiety and nervousness in having to pay out of pocket for the needed construction to remedy the cause of the water damage. The plaintiff has suffered from sleep deprivation by worrying about the failure of the defendants to provide needed funds to remedy the cause of the water damage. The plaintiff also worried that a new storm would cause repeated damage and that the defendants would not help her to complete remedial repairs.  Because of the water damage, and condition of the damaged area, rats and mice infected the damaged area causing plaintiff to hire rodent control.  The plaintiff has had to sell assets and pay taxes on those sales in order to fund the ongoing necessary construction. The out of pocket costs associated with the remedial repairs have resulted in fewer vacations for the plaintiff and her family. The plaintiff has had to store clothes and furniture in the garage with the outcome that most of these items are destroyed from the elements. Defendants outrageous conduct was a substantial factor in causing Plaintiff's severe emotional distress.

84.  Under California Civil Code section 3294 there is clear and convincing evidence that the Defendants are guilty of oppression, fraud or malice in failing to investigate Plaintiff's claim for losses suffered and for unreasonably delaying and failing to pay for Plaintiff's losses by falsely interpreting the language of the policy to assert that the claimed repairs are an "improvement and betterment" not covered under the policy. The Defendants intentionally made false statements that the full claim for repairs would be paid so that the remedial repairs could be completed.  Delaying and ultimately denying portion of Plaintiff's claim were made with malice, intent and reckless indifference to the harm caused to Plaintiff. The delay and denial of Plaintiff's claim is a Breach of the Implied Obligation of Good Faith and Fair Dealing. Defendant "Palomar" at all times ratified all aspects of the management of the subject claim by their agent/administrator "Sedgwick."   The Plaintiff hereby requests punitive damages

**SIXTH CAUSE OF ACTION**
**(Intentional Misrepresentation)**

85. Plaintiff hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

86. Palomar Specialty Insurance and Sedgwick Claims Management Services changed adjusters for the purpose of delaying and ultimately denying Plaintiff the benefit of her policy.  Sedgwick adjuster/administrators represented to Plaintiff that her claim would be fully paid to finish needed repairs to prevent future water intrusion into the subject residence. This representation was false. Defendants knew the representations to be false at the time the representation was made. The Defendants intended the Plaintiff to rely on these representations and the Plaintiff reasonably relied on the representations and was harmed by

the reliance that she had to spend more than two years without repairing her residence and had to spend money out of pocket to ultimately finish the repairs. Her reliance on the representation was a substantial factor in causing her harm.

87. The Plaintiff suffered mental and emotional distress from the Intentional Misrepresentation. Plaintiff, Dr. Mary Tagliaferri, claims that Defendants Palomar Specialty Insurance Company and their administrator of claims, Sedwick Claims Management Services conduct caused her to suffer serious emotional distress. Plaintiff alleges that Defendants intentionally delayed and ultimately denied her claim and that she suffered serious emotional distress as the result of intentional misrepresentations. Her reliance on the intentional representations caused her to suffer anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame such that a reasonable person would be unable to cope with it.  The defendants provided adjuster after adjuster, using delay tactics and false narratives in an attempt to not provide the benefits of the policy aggravating an already stressful situation. With every new adjuster, the plaintiff had to begin the claim process anew which required educating the new adjuster to the details of the claim and providing multiple documents that had been provided to the prior adjuster with detailed accounting and work orders. Restarting the claim process resulted in the plaintiff spending an inordinate amount of time with a new adjuster at the cost of spending time with family and friends.

Changing adjusters created severe emotional distress with desperate frustration as prior adjusters informed the plaintiff that she would be reimbursed for her loss so that she could continue the construction needed to remedy the leaks causing water damage to her property. The plaintiff suffered severe anxiety with the loss of use of her daughter's bedroom

38 | P a g e

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

because of the need for plaintiff and her daughter to now share living quarters. The plaintiff's daughter has refused to return home from college until the construction is finished, and she has her own bedroom and bathroom separate from her mother. This has resulted in sadness and isolation suffered by the plaintiff. The plaintiff has also suffered severe anxiety and nervousness in having to pay out of pocket for the needed construction to remedy the cause of the water damage. The plaintiff has suffered from sleep deprivation by worrying about the failure of the defendants to provide needed funds to remedy the cause of the water damage. The plaintiff also worried that a new storm would cause repeated damage and that the defendants would not help her to complete remedial repairs. Because of the water damage, and condition of the damaged area, rats and mice infected the damaged area causing plaintiff to hire rodent control. The plaintiff has had to sell assets and pay taxes on those sales in order to fund the ongoing necessary construction. The out of pocket costs associated with the remedial repairs have resulted in fewer vacations for the plaintiff and her family. The plaintiff has had to store clothes and furniture in the garage with the outcome that most of these items are destroyed from the elements. Defendants outrageous conduct and intentional misrepresentation was a substantial factor in causing Plaintiff's severe emotional distress.

88. Under California Civil Code section 3294 there is clear and convincing evidence that the Defendants are guilty of oppression, fraud or malice in failing to investigate Plaintiff's claim for losses suffered and for unreasonably delaying and failing to pay for Plaintiff's losses by falsely interpreting the language of the policy to assert that the claimed repairs are an "improvement and betterment" not covered under the policy. The Defendants intentionally made false statements that the full claim for repairs would be paid so that the remedial repairs

1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION

could be completed.  Delaying and ultimately denying portion of Plaintiff's claim were made with malice, intent and reckless indifference to the harm caused to Plaintiff. The delay and denial of Plaintiff's claim is a Breach of the Implied Obligation of Good Faith and Fair Dealing.  Defendant "Palomar" at all times ratified all aspects of the management of the subject claim by their agent/administrator "Sedgwick."  The Plaintiff hereby requests punitive damages

## SEVENTH CAUSE OF ACTION
### (Negligent Misrepresentation)

89. Plaintiff hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

90. Defendant Sedgwick adjusters represented to the Plaintiff that Palomar Specialty Insurance would pay for all the damage to the residence of Plaintiff due to water intrusion following a storm. This was a false representation of fact that the Defendant did not have reasonable grounds for believing the statement to be true, even if they honestly believed it at the time. The Defendants intended the Plaintiff to rely on the statement so that they could delay payment and ultimately deny full payment. The Plaintiff relied on the false statement and suffered damages as the result of the negligent misrepresentation.

91. The Plaintiff suffered mental and emotional distress from Negligent Misrepresentation. Plaintiff, Dr. Mary Tagliaferri, claims that Defendants Palomar Specialty Insurance Company and their administrator of claims, Sedwick Claims Management Services conduct caused her to suffer serious emotional distress as a result of misrepresentations. The Plaintiff suffered mental and emotional distress from the Negligent Misrepresentations. Plaintiff, Dr. Mary Tagliaferri, claims that Defendants Palomar Specialty Insurance Company and their

1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION

administrator of claims, Sedwick Claims Management Services conduct caused her to suffer serious emotional distress. Plaintiff alleges that Defendants intentionally delayed and ultimately denied her claim and that she suffered serious emotional distress as the result of Negligent Misrepresentations. Her reliance on the negligent representations caused her to suffer anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame such that a reasonable person would be unable to cope with it.  The defendants provided adjuster after adjuster, using delay tactics and false narratives in an attempt to not provide the benefits of the policy aggravating an already stressful situation. With every new adjuster, the plaintiff had to begin the claim process anew which required educating the new adjuster to the details of the claim and providing multiple documents that had been provided to the prior adjuster with detailed accounting and work orders. Restarting the claim process resulted in the plaintiff spending an inordinate amount of time with a new adjuster at the cost of spending time with family and friends.

Changing adjusters created severe emotional distress with desperate frustration as prior adjusters informed the plaintiff that she would be reimbursed for her loss so that she could continue the construction needed to remedy the leaks causing water damage to her property. The plaintiff suffered severe anxiety with the loss of use of her daughter's bedroom because of the need for plaintiff and her daughter to now share living quarters. The plaintiff's daughter has refused to return home from college until the construction is finished, and she has her own bedroom and bathroom separate from her mother. This has resulted in sadness and isolation suffered by the plaintiff.  The plaintiff has also suffered severe anxiety and nervousness in having to pay out of pocket for the needed construction to remedy the cause

**1ˢᵗ AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

of the water damage. The plaintiff has suffered from sleep deprivation by worrying about the failure of the defendants to provide needed funds to remedy the cause of the water damage. The plaintiff also worried that a new storm would cause repeated damage and that the defendants would not help her to complete remedial repairs.  Because of the water damage, and condition of the damaged area, rats and mice infected the damaged area causing plaintiff to hire rodent control.  The plaintiff has had to sell assets and pay taxes on those sales in order to fund the ongoing necessary construction. The out of pocket costs associated with the remedial repairs have resulted in fewer vacations for the plaintiff and her family. The plaintiff has had to store clothes and furniture in the garage with the outcome that most of these items are destroyed from the elements. Defendants' outrageous conduct and negligent misrepresentations was a substantial factor in causing Plaintiff's severe emotional distress.

92.  Under California Civil Code section 3294 there is clear and convincing evidence that the Defendants are guilty of oppression, fraud or malice in failing to investigate Plaintiff's claim for losses suffered and for unreasonably delaying and failing to pay for Plaintiff's losses by falsely interpreting the language of the policy to assert that the claimed repairs are an "improvement and betterment" not covered under the policy. The Defendants intentionally made false statements that the full claim for repairs would be paid so that the remedial repairs could be completed.  Delaying and ultimately denying portion of Plaintiff's claim were made with malice, intent and reckless indifference to the harm caused to Plaintiff. The delay and denial of Plaintiff's claim is a Breach of the Implied Obligation of Good Faith and Fair Dealing.  Defendant "Palomar" at all times ratified all aspects of the management of the

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**

subject claim by their agent/administrator "Sedgwick."  The Plaintiff hereby requests punitive damages

WHEREFORE, Plaintiff prays as hereinafter set forth.

**PRAYER**

93. Plaintiff prays for judgment against all defendants, and against each of them, as follows:

a. Damages for breach of contract, including the value of benefits Plaintiff was entitled to receive under the Policy and consequential damages;

b. Damages for emotional distress in the amount of $300,000.00

c. For punitive damages against all Defendants for the protection of the public;

d. For costs of suit; and

e. For pre-judgment and post-judgment interest at the prevailing legal rate;

f. For reasonable attorney fees;

g. For whatever further relief, as the Court may deem proper.

**JURY DEMAND**

h. Plaintiffs hereby demand a trial by the jury on any and all issues triable by jury.

Dated: June 25, 2025

/s/*George D. Oliver*
George Oliver, Esq.
Kenneth Coren , Esq.
Attorneys for Plaintiff
MARY TAGLIAFERRI

**1st AMENDED COMPLAINT FOR DAMAGES BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; FAILURE OR DELAY IN PAYMENT; BAD FAITH; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL MISREPRESENTATION; NEGLIGENT MISREPRESENTATION**