UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY TAGLIAFERRI,<br><br>        Plaintiff,<br><br>    v.<br><br>PALOMAR SPECIALTY INSURANCE COMPANY, et al.,<br><br>        Defendants. | Case No. 25-cv-02148-KAW<br><br>**ORDER GRANTING MOTION TO DISMISS; GRANTING MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 27, 28 |

Plaintiff Mary Tagliaferri brings the instant action against Defendants Palomar Specialty Insurance Co. ("Palomar") and Sedgwick Claims Management Services ("Sedgwick"), alleging that Defendants failed to pay the total amount due under an insurance policy. (First Amend. Compl. ("FAC") ¶ 15, Dkt. No. 25.) Pending before the Court are: (1) Defendants' motion to dismiss the first amended complaint, and (2) Defendants' motion to strike Plaintiff's request for punitive damages. (Defs.' Mot. to Dismiss, Dkt. No. 27; Defs.' Mot. to Strike, Dkt. No. 28.)

Having considered the parties' filings, the relevant legal authorities, and the arguments made at the August 21, 2025 and November 6, 2025[1] hearings, the Court GRANTS Defendants' motion to dismiss and GRANTS Defendants' motion to strike.

## I. BACKGROUND

Plaintiff is the owner of a property located in San Anselmo, California ("Subject Property"). (FAC ¶ 1.) The Subject Property is covered by a flood insurance policy (the "Policy") issued by Defendant Palomar, with claims administered by Defendants Sedgwick. (FAC ¶ 2.)

In January 2023, a severe rainstorm caused water damage to the Subject Property. (FAC

---

[1] The August 21, 2025 hearing was continued to November 6, 2025 due to a medical emergency during the hearing. (*See* Dkt. No. 37.)

¶¶ 13-14.) Although Plaintiff submitted to Defendants detailed estimates for remedial repairs in the amount of $189,070.25 and requested $50,000 for loss of use of the Subject Property, Defendants ultimately paid $86,423.06. (FAC ¶ 15.) In denying the remainder, Defendants found that Plaintiff's repairs were "improvements" that were not covered under the Policy. (FAC ¶¶ 15, 18.) Plaintiff disputes this finding, arguing that the repairs were necessary to stop water intrusion from the January 2023 storms. (FAC ¶¶ 16, 20.)

Plaintiff provides a timeline of her interactions with Defendants starting on January 30, 2023 -- the first site visit by Defendant Sedgwick's field adjuster, John Weber -- and August 6, 2024 -- the final denial by Defendant Palomar's Vice President for Property Claims. (FAC ¶¶ 22-59.) These interactions included Mr. Weber's site inspections, communications from Plaintiff to Defendants regarding her concerns about the mishandling of her claim and the delay of reimbursements, the findings of Plaintiff's independent expert, and the assignment of three different examining adjusters to her case. ("FAC ¶¶ 24, 27-30, 33-36, 38, 39-42, 49-58.)

On March 3, 2025, Plaintiff filed the instant case. (Dkt. No. 1.) On June 26, 2025, Plaintiff filed the first amended complaint pursuant to the parties' stipulation. Plaintiff asserted claims for: (1) breach of contract, (2) breach of the implied obligation of good faith and fair dealing, (3) bad faith -- failure to properly investigate claim, (4) intentional infliction of emotional distress ("IIED"), (5) negligent infliction of emotional distress ("NIED"), (6) intentional misrepresentation, and (7) negligent misrepresentation. Plaintiff also sought punitive damages. (FAC ¶ 92.)

On July 10, 2025, Defendants filed a motion to dismiss and a motion to strike the punitive damages request. Plaintiff did not file oppositions to either motion; on July 25, 2025, the Court issued an order to show cause. (Dkt. No. 29.) In the order to show cause, the Court noted: "Pursuant to the undersigned's standing order, '[t]he failure of the opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute consent to the granting of the motion.'" (*Id.* (quoting Judge Westmore's General Standing Order ¶ 23).) The Court extended Plaintiff's opposition deadline to July 31, 2025. (*Id.*)

On July 31, 2025, Plaintiff filed an opposition to the motion to dismiss. (Pl.'s Opp'n, Dkt.

1  No. 30.)  Plaintiff's counsel also filed a declaration explaining the late filing of the opposition to

2  the motion to dismiss.  (Dkt. No. 31.)  Plaintiff did not file an opposition to the motion to strike,

3  and neither the opposition to the motion to dismiss nor the declaration by Plaintiff's counsel

4  addressed the motion to strike.

5  On August 7, 2025, Defendants filed their reply in support of their motion to dismiss.

6  (Defs.' Reply, Dkt. No. 34.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate.  *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted

3

1  unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's

2  liability, it stops short of the line between possibility and plausibility of entitlement to relief."

3  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

4      Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no

5  request to amend is made "unless it determines that the pleading could not possibly be cured by

6  the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations

7  omitted).

## III.    DISCUSSION

### A.    Order to Show Cause and Motion to Strike

As previously noted, Defendants filed a motion to dismiss and a motion to strike, which Plaintiff failed to timely oppose. After the Court issued an order to show cause, Plaintiff filed an opposition as to the motion to dismiss only.

Accordingly, the Court DISCHARGES the order to show cause in part. As Plaintiff has filed the opposition to the motion to dismiss, the Court will review Defendants' motion to dismiss on the merits. As to the motion to strike, however, Plaintiff neither filed an opposition nor explained her failure to file an opposition. Accordingly, the Court GRANTS the motion to strike Plaintiff's request for punitive damages without leave to amend as unopposed.

Further, the Court observes that Plaintiff repeatedly quotes or cites cases for certain principles, but that these quotations or principles **do not exist** in the case. At the hearing, Plaintiff's counsel admitted that he used AI, and that he was aware that AI could create fictitious cases but not that it would make up fake quotes. This is particularly concerning because a significant number of these cases are the **only** cases that Plaintiff relies upon; thus, Plaintiff is effectively misrepresenting the legal basis for his arguments. Not only did this waste the Court's limited judicial resources by forcing the Court to review cases that did not stand for the propositions for which Plaintiff cited them, but this appears to be a violation of Rule 11. Nevertheless, the Court appreciates Plaintiff's counsel's candor and will not impose sanctions. Such improper behavior, however, will be subject to sanctions going forward.

**B.     Motion to Dismiss**

      **i.     Defendant Sedgwick**

Defendants argue that Defendant Sedgwick should be dismissed because it was acting as Defendant Palomar's agent in administering the claims at issue.  (Defs.' Mot. to Dismiss at 7.)  In the insurance context, California courts have explained: "Liability to the . . . insured for acts or contracts of an insurance agent with the scope of his agency, with a full disclosure of the principal, rests on the [principal]."  *Lipper v. Bailey*, 241 Cal. App. 2d 376, 382 (1966); *see also Kurtz, Richards, Wilson & Co. v. Ins. Communicators Mktg. Corp.*, 12 Cal. App. 4th 1249, 1257-58 (1993) ("Where the agent contracts in the name of the insurer and does not exceed that authority, the insurer is liable, and not the agent."); *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 808 (N.D. Cal. 1998) ("[Plaintiff] presents no California case, and the Court knows of none, holding that an insurance agent whose principal is disclosed can ever be held liable for acts committed within the scope of his or her agency.").

Here, Plaintiff does not dispute that Defendant Sedgwick was acting as Defendant Palomar's agent or that Defendant Sedgwick disclosed that they were acting on behalf of Defendant Palomar.  Instead, Plaintiff argues that there are allegations that Defendant Sedgwick "engaged in conduct which may have exceeded the scope of its agency and that such conduct was ratified by Palomar."  (Pl.'s Opp'n at 2.)

Plaintiff does not explain how this ratification theory imposes liability on an agent for an insurance company.  Plaintiff's legal citations do not assist because they do not stand for the propositions Plaintiff claims they do.  First, Plaintiff cites *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir. 1991) for the proposition that "questions regarding scope of employment are generally issues of fact for the jury."  (Pl.'s Opp'n at 3.)  This citation, however, is a discussion of *Monell* liability, *i.e.*, when municipalities can be held liable for a constitutional violation.  *See Davis*, 927 F.2d at 1480.  The cited page does not include any discussion about scope of employment or what constitutes a jury question.  Likewise, Plaintiff attributes the following quote to *Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73 (1972): "Ratification may be inferred from the failure to repudiate an unauthorized act, especially where there is knowledge of the act and the benefit

5

derived." (Pl.'s Opp'n at 3.) This quote does not appear anywhere in *Rakestraw*. Indeed, *Rakestraw* appears to support Defendants' position that Defendant Sedgewick should be dismissed because it was acting as Defendant Palomar's agent, as *Rakestraw* finds that where an individual "is considered to be an agent with authority at the time he performed the act, he does not incur liability for acts done within the scope of that authority." 8 Cal. 3d at 73.

In the alternative, Plaintiff complains that Defendant Palomar would not stipulate to accept liability for all of Defendant Sedgwick's actions. (Pl.'s Opp'n at 3.) It is unclear how this is relevant to whether Defendant Sedgwick can be held legally liable.

Finally, Plaintiff argues that Defendant Sedgwick can be held directly liable for its own tortious conduct. (Pl.'s Opp'n at 4.) The Court again observes that Plaintiff attributes a quotation to a case, but that the quotation does not exist in the case. (*See id.* ("quoting" *Peredia v. HR Mobile Services, Inc.*, 25 Cal. App. 5th 680, 690 (2018)).) Nevertheless, courts have indeed found that even when an agent acts within the scope of their employment, they "may not defraud the insured with impunity and still may be held personally liable for their tortious conduct. The possibility that [the insurer] is itself liable for [the agents'] actions does not bar them from liability by virtue of their agency relationship." *Smith v. Allstate Ins. Co.*, No. C 10-0407 SI, 2010 U.S. Dist. LEXIS 68464, at *12 (N.D. Cal. June 17, 2010). Thus, the Court must consider whether Defendant Sedgwick can be held liable on a claim-by-claim basis.

### ii. First and Second Claims: Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants seek to dismiss Defendant Sedgwick from the breach of contract and breach of the implied covenant of good faith and fair dealing claims because Defendant Sedgwick was not a party to the contract. (Defs.' Mot. to Dismiss at 11.) "It is well established that, under California law, only a party to an insurance contract may be held liable for breach of contract or for breach of the implied covenant of good faith and fair dealing." *Jones v. AIG Risk Mgmt.*, 726 F. Supp. 2d 1049, 1054 (citing *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 576 (1973)). Moreover, courts have found that "[a] party that serves as an adjuster or claims handler is not, absent other circumstances, a party to the insurance contract." *Id.* at 1055.

1  Plaintiff responds that she has alleged that Defendant Sedgwick performed wrongful conduct that frustrated the insurance contract, including changing claims adjusters in a way that unreasonably delayed or denied reimbursement. (Pl.'s Opp'n at 5.) Thus, Plaintiff argues that "[w]hether or not Sedgwick was a contracting party is not dispositive if its conduct amounts to interference with the contractual relationship." (*Id.*) In support for this proposition, Plaintiff cites to *Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 555; these cases merely explain what the pleading standard are, and state nothing about whether tortious conduct transforms a non-party into a party to a contract. In any case, as Defendants point out, Plaintiff has not alleged an interference with contract claim. (Defs.' Reply at 3.)

In the alternative, Plaintiff argues that an agent may be held liable for tort claims, such as fraud, misrepresentation, and actions outside the bounds of their authority. (Pl.'s Opp'n at 5-6, 8-9.) This is beside the point; the fact that Defendant Sedgwick could, in theory, be liable for fraud does not mean Defendant Sedgwick is *also* liable for breach of a contract to which they are not a party. Different claims have different requirements. A breach of contract and breach of the covenant of good faith and fair dealing claim require that the defendant be a party to the contract. Plaintiffs cite no authority to the contrary.[2]

Finally, Plaintiff argues that the fact that Defendant Sedgwick is not on the policy is immaterial if it exceeded its authority. In support, Plaintiff cites *Lingsch v. Savage*, 213 Cal. App. 2d 729, 739-40 (1963) and *Crawford v. Nastos*, 182 Cal. App. 2d 659, 665 (1960) to argue: "When an agent *exceeds its authority*, undertakes *wrongful conduct*, or commits *fraud*, the agent can be held personally liable. This principle protects innocent third parties -- like Plaintiff - who are misled or harmed by an agent's apparent but unauthorized authority." (Pl.'s Opp'n at 10.) Again, the citations are misrepresented. The citation in *Lingsch* concerns scienter while the

---

[2] Plaintiff does cite *Cates Construction, Inc. v. Talbots Partners*, 21 Cal. 4th 28 (1999) for the following direct quote: "[T]he covenant of good faith and fair dealing imposes obligations on the insurer, not the claims administrator. But agents may nonetheless be liable under general tort principles if they commit independently wrongful acts." (Pl.'s Opp'n at 9 ("quoting" *Cates Constr., Inc.*, 21 Cal. 4th at 63).) Again, this quote does not exist. Additionally, based on the Court's review, it is not apparent that *Cates Construction, Inc.* concerns liability of agents or claims administrators at all.

7

1    citation in *Crawford* concerns the joint and several nature of damages. Again, it is not apparent to
2    the Court that Defendant Sedgwick could be found liable for breach of contract or the implied
3    covenant of good faith and fair dealing even if it exceeded its authority, as it is still not a party to
4    the contract. Further, it is not apparent that Plaintiff has alleged facts demonstrating that
5    Defendant Sedgwick exceeded its authority; Plaintiff provides no citations to the complaint, so it
6    is entirely unclear what allegations Plaintiff relies upon for this proposition.

7    Accordingly, the breach of contract and breach of the implied warranty of good faith and
8    fair dealing claims are dismissed with prejudice as to Defendant Sedgwick.

### iii.    Third Claim: Bad Faith -- Failure to Properly Investigate

Defendants argue that Plaintiff's third claim must be dismissed because it is duplicative of the breach of the implied covenant of good faith and fair dealing. (Defs.' Mot. to Dismiss at 13.) Plaintiff acknowledges in the opposition that "an insurer's failure to properly investigate a claim is a well-established ground for liability under the implied covenant of good faith and fair dealing." (Pl.'s Opp'n at 11.)

Regardless, Plaintiff argues that it is not impermissibly duplicative because the third claim focuses on Defendants' failure to conduct a reasonable investigation. (*Id.*) Plaintiff further contends she is permitted to plead in the alternative. (*Id.* at 12.) As Defendants point out, however, the operative complaint already includes allegations of failure to investigate in connection with Plaintiff's implied covenant of good faith and fair dealing claim. (*See* FAC ¶ 71 (alleging that Defendants breached the covenant of good faith and fair dealing because they "unreasonably failed to investigate").) Thus, this does not appear to be a case where Plaintiff is pleading alternative theories of liability. Rather, Plaintiff acknowledges that the failure to investigate is subsumed by the implied covenant of good faith fair dealing, and that both claims are based on the same failure to investigate. Thus, it appears to be unnecessarily duplicative and subject to dismissal.

Accordingly, the failure is dismissed with prejudice. Plaintiff is not precluded from raising the allegations that underlie this claim to support her implied covenant of good faith and fair dealing claim.

### iv. Fourth Claim: Intentional Infliction of Emotional Distress

Defendants seek the dismissal of Plaintiff's IIED claim based on: (1) the failure to identify extreme and outrageous conduct, and (2) the failure to allege severe emotional distress. (Defs.' Mot. to Dismiss at 14, 16.)

Even assuming that Plaintiff has adequately alleged severe emotional distress, the Court finds that Plaintiff has failed to identify extreme and outrageous conduct. As a general matter, "[l]iability for intentional infliction of emotional distress extends only to conduct so extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Coleman v. Republic Indem. Ins. Co.*, 132 Cal. App. 4th 403, 416 (2005) (internal quotation omitted). In the insurance context, "California courts have held that delay or denial of insurance claims is not sufficiently outrageous to state a cause of action for intentional infliction of emotional distress." *Id.* at 417. Rather, courts have only found extreme and outrageous conduct in limited circumstances. For example, in *Fletcher v. Western National Life Insurance Co.*, the defendants conceded that their behavior was outrageous where they had attempted to reduce their liability for disability payments by falsely accusing the plaintiff of failing to disclose a preexisting condition, demanding the return of benefits paid, and threatening litigation despite having no cause to believe that the plaintiff had made any misrepresentation. 10 Cal. App. 3d 376, 392 (1970). Likewise, in *Coleman*, the court found that outrageous conduct would exist "where an insurer's investigator engages in a romantic relationship with the claimant so that he could take photographs of her to compromise her worker's compensation claim." 132 Cal. App. 4th at 417. In contrast, in *Ricard v. Pacific Indemnity Co.*, the plaintiff alleged that the insurer refused to properly investigate, process, and communicate with him regarding his claim, including intentionally ignoring his medical bills. 132 Cal. App. 3d 886, 889-90 (1982). The court found that these allegations were not sufficient to satisfy the "outrageous" conduct required for IIED. *Id.* at 895.

Here, Plaintiff alleges that Defendants "deliberately cycled through claims adjusters, causing prolonged delays in payment and ongoing uncertainty regarding her ability to complete necessary repairs." (Pl.'s Opp'n at 14.) Specifically, Defendant Sedgwick ultimately assigned

three different examining adjusters to the case, although it appears the field adjuster remained the same. (FAC ¶ 49.)

This does not rise to the level of outrageous conduct that is required for IIED; rather, it appears to be more akin to the delay in investigation and reimbursement claims that courts have found insufficient. *See Atteukenian v. Ohio Sec. Ins. Co.*, No. CV 23-6539 PA (MARx), 2023 U.S. Dist. LEXIS 231290, at *5 (C.D. Cal. Nov. 17, 2023) (finding that allegations that the defendant "persistently engaged in delaying tactics" in investigating and processing the plaintiff's claims were insufficient to allege an IIED claim). Indeed, the fact that Defendants changed the examining adjuster twice to intentionally delay payment does not appear to rise to the level of far more egregious behavior that courts have found insufficient to allege an IIED claim. *See Coleman*, 132 Cal. App. 4th at 417 (finding no IIED where the insurer misled the claimant about the applicable statute of limitations and directly advised the claimant not to obtain the services of an attorney); *Ricard*, 132 Cal. App. 3d at 889-90 (finding no IIED where the insurer refused to investigate and process the plaintiff's claim); *Bock v. Hansen*, 225 Cal. App. 4th 215, 234-35 (2014) (finding no IIED where the insurance adjuster ignored overwhelming evidence that supported coverage, altered the scene of the accident to deny the claim, created a false report stating that the plaintiffs confirmed no damage, conspired with an unlicensed contractor to create a knowingly false report that was used to deny coverage, failed to acknowledge the plaintiffs' documentation and expert report, and made rude and disparaging remarks to the plaintiffs).

Here, it does not appear that Plaintiff can allege the extreme and outrageous conduct required for IIED. Accordingly, Plaintiff's IIED claim is dismissed with prejudice.

### v.    Fifth Claim: Negligent Infliction of Emotional Distress

Plaintiff agrees to dismiss this claim. (Pl.'s Opp'n at 17.) Accordingly, Plaintiff's NIED claim is dismissed with prejudice.

### vi.    Sixth and Seventh Claims: Intentional and Negligent Misrepresentation

Defendants argue that Plaintiff's misrepresentation claims must be dismissed because they are not pled with sufficient specificity. (Defs.' Mot. to Dismiss at 19.)

Plaintiff does not dispute that Plaintiff's claims must satisfy Rule 9(b). (Pl.'s Opp'n at 17-

18.) "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (cleaned up). Thus, a plaintiff must allege "the who, what, when, where, and how of the misconduct charged." *Id.* (internal quotation omitted). Here, Plaintiff asserts there was a misrepresentation because Defendant Sedgwick's "adjuster/administrators represented to Plaintiff that her claim would be fully paid to finish needed repairs to prevent future water intrusion into the subject residence." (FAC ¶ 86; *see* Pl.'s Opp'n at 18.) The Court finds that these allegations are insufficient to support either an intentional or negligent misrepresentation claim.

As an initial matter, Plaintiff fails to identify who made the statements or when the statements were made. "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991). Plaintiff does not identify the specific individual(s) who made the statements or when the statements were made.

Further, the alleged misrepresentation -- that Plaintiff's claim "would" be fully paid out -- is effectively a promise to perform at some future time. *See Tarmann*, 2 Cal. App. 4th at 158 ("The critical alleged misrepresentation as to immediate payment upon completion did not involve a past or existing material fact. Rather, it involved a promise to perform at some future time."). To maintain a claim based on a false promise, however, a plaintiff must "specifically allege . . . that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promise to do or not do a particular thing." *Id.* at 159. Plaintiff, however, includes only conclusory statements that "[t]his representation was false. Defendants knew the representations to be false at the time the representation was made. The Defendants intended the Plaintiff to rely on these representations and the Plaintiff reasonably relied on the representations[.]" (FAC ¶ 86.) Such conclusory allegations are insufficient. *See Johnson v.*

11

*Navient Corp.*, No. 2:24-cv-03164-ODW (SKx), 2025 U.S. Dist. LEXIS 65014, at *14-15 (C.D. Cal. Apr. 4, 2025) (finding that allegations that the defendants knew the representations were false or that they made the representations recklessly, and that the defendants intended for the plaintiff to rely on the representations were conclusory and inadequate); *Lothlen v. Wells Fargo Bank, N.A.*, No. C 13-00922 SI, 2014 U.S. Dist. LEXIS 42310, at *17-18 (N.D. Cal. Mar. 27, 2014) (same).

Because it is not apparent to the Court that amendment is futile, the Court will permit Plaintiff to amend the intentional misrepresentation claim. The Court, however, finds that to the extent Plaintiff premises her negligent misrepresentation claim on the alleged misrepresentation that her claim would be fully paid, Plaintiff's claim cannot survive. *Tarmann* is clear that while a false promise can support an intentional misrepresentation claim, it cannot be the basis for a negligent misrepresentation claim because it necessarily requires an "intent to perform." 2 Cal. App. 4th at 159. Thus, "[t]he specific intent requirement . . . precludes pleading a false promise claim as a negligent misrepresentation[.]" *Id.*; *see also Stockton Mortg., Inc. v. Tope*, 233 Cal. App. 4th 437, 458 (2014) ("Although a false promise to perform in the future can support an *intentional* misrepresentation claim, it does not support a claim for *negligent* misrepresentation."); *Valencia v. Nationstar Mortg. LLC*, No. 25-cv-02875-VKD, 2025 U.S. Dist. LEXIS 101469, at *8 n.3 (N.D. Cal. May 28, 2025) ("Under California law, statements about future events, such as false promises, generally cannot support a claim of negligent misrepresentation, although they may support a claim for intentional misrepresentation."). While Plaintiff asserts that a negligent misrepresentation claim may be based on an assertion that a claim will be paid, Plaintiff cites no authority in support. (*See* Pl.'s Opp'n at 21.) Thus, because Plaintiff's negligent misrepresentation claim is based solely on the alleged false promise that her claim would be fully paid, this claim is dismissed with prejudice.

## IV.   CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss and motion to strike. Specifically, the Court DISMISSES the following claims with prejudice: (1) the breach of contract claim against Defendant Sedgwick, (2) the breach of the covenant of good faith

and fair dealing claim against Defendant Sedgwick, (3) the bad faith - failure to properly investigate claim, (4) the IIED claim, (5) the NIED claim, and (6) the negligent misrepresentation claim.  The Court DISMISSES the intentional misrepresentation claim with leave to amend. Finally, the Court STRIKES Plaintiff's request for punitive damages with prejudice.

Contrary to Defendants' assertion that the Court should "dismiss the entirety of Plaintiff's FAC" (Defs.' Mot. to Dismiss at 2), Defendants have not moved for dismissal of the breach of contract and breach of the covenant of good faith and fair dealing claims as to Defendant Palomar. Thus, these claims will proceed.

Plaintiff may file an amended complaint within **30 days** of the date of this order.

IT IS SO ORDERED.

Dated: December 1, 2025

*Kandis Westmore*
KANDIS A. WESTMORE
United States Magistrate Judge