GEORGE D. OLIVER, ESQ. SBN 146321
LAW OFFICE OF GEORGE D. OLIVER
42 Hickory Road
Fairfax, CA 94930
San Rafael, CA.  94903
(415) 485-4430
(415) 485-1147
go@goliverlaw.com

Attorney for Plaintiff Mary Tagliaferri

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **MARY TAGLIAFERRI,** ) | Case No 4:25-cv-02148-KAW |
| ) | |
| **Plaintiffs,** ) | **SECOND AMENDED COMPLAINT** |
| ) | **FOR DAMAGES (AMENDED BY** |
| **vs.** ) | **LEAVE OF COURT)** |
| ) | **BREACH OF CONTRACT TO PAY A** |
| ) | **COVERED CLAIM; BREACH OF THE** |
| **PALOMAR SPECIALTY INSURANCE COMPANY,** ) | **IMPLIED OBLIGATION OF GOOD** |
| **SEDGWICK CLAIMS MANAGEMENT SERVICES,** ) | **FAITH AND FAIR DEALING;** |
| **DOES 1-99,** ) | **INTENTIONAL** |
| ) | **MISPREPRESENTATION** |
| ) | |
| **Defendants.** | **Judge: Hon. Kandis A. Westmore** |
| | Complaint Filed: March 3, 2025 |
| | Trial Date: Not set |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

***(JURY TRIAL DEMANDED)***

**I. PARTIES**

**SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A
COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR
DEALING; INTENTIONAL MISPREPRESENTATION**

1. Plaintiff MARY TAGLIAFERRI, M.D. ("Plaintiff") is an individual residing at 135 Tarry Road, San Anselmo, California 94960 and at all relevant times was employed as Chief Medical Officer for Nektar Therapeutics.

2. Defendant PALOMAR SPECIALTY INSURANCE COMPANY ("Palomar") is an insurance company authorized to transact insurance business in California and issued the flood insurance policy at issue.

3. Defendant SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. ("Sedgwick") served as Palomar's third-party claims administrator and exercised direct control over claim investigation, adjustment, communications, documentation, representations, and recommendations regarding payment of Plaintiff's claim.

4. Plaintiff is the beneficiary/insured under a flood policy issued by Palomar covering the Property, including Policy No. PPFLP-23-1487846-01 (the "Policy").

5. Defendants DOES 1–20 are individuals and/or entities whose true names and capacities are unknown. Plaintiff will amend this Complaint when their identities are ascertained.

---

### II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to **28 U.S.C. § 1332(a)** because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff is a citizen of the State of California. Defendant **Palomar Specialty Insurance Company** is a corporation organized and existing under the laws of the State of

**SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISPREPRESENTATION**

**Oregon**, with its principal place of business outside California. Jurisdiction is further proper pursuant to the forum-selection clause contained in the applicable insurance policy, which mandates that any suit arising out of the policy or the handling of a claim be filed in the United States District Court for the district in which the insured property is located**.** This action arises from a **Private Flood Insurance Policy**, expressly defined in the policy as a "**Private Flood Insurance Policy ('PFIP')**," issued by Palomar Specialty Insurance Company, a private stock insurer, and **not** a policy issued pursuant to the National Flood Insurance Program ("NFIP").

The policy expressly distinguishes itself from NFIP coverage, stating that NFIP insurance is merely an **alternative** to the coverage provided under this private policy.

7. Because this action arises from a **private insurance contract** rather than a Standard Flood Insurance Policy issued under the National Flood Insurance Act, **state substantive law applies** to Plaintiff's claims, including claims for breach of contract and insurance bad faith. Federal jurisdiction exists solely by virtue of diversity of citizenship and contractual forum selection, not federal preemption.

8. Complete diversity exists between Plaintiff and Defendant.

9. Venue is proper in this District because the insured property that is the subject of this action is located within this District and because the parties contractually agreed to venue in this Court.

III. **NO FEDERAL PREEMPTION**

SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISPREPRESENTATION

10. This action is **not preempted** by the National Flood Insurance Act of 1968 ("NFIA"), 42 U.S.C. § 4001 et seq., nor by regulations governing the National Flood Insurance Program ("NFIP"). The insurance policy at issue is a **private flood insurance policy**, not a Standard Flood Insurance Policy ("SFIP") issued pursuant to the NFIP.

11. The policy expressly defines itself as a **"Private Flood Insurance Policy ('PFIP')"**, issued by **Palomar Specialty Insurance Company**, a private stock insurer, and not by the Federal Emergency Management Agency ("FEMA") or a Write-Your-Own ("WYO") carrier acting on behalf of the United States.

12. The policy further confirms that coverage under the NFIP is merely an **alternative** to the coverage provided under this private policy, stating that flood insurance *may be available* under the NFIP as an alternative to the coverage issued by Palomar Specialty Insurance Company. Consistent with its express designation as a private policy, the insurance contract was issued, underwritten, and administered solely by Palomar Specialty Insurance Company as a private insurer, without federal backing, federal funds, or federal claims administration. The policy was not issued pursuant to federal statute or regulation, does not incorporate NFIP claims-handling procedures, and does not designate FEMA or the United States as a real party in interest.

13. Although the policy contains a contractual forum-selection clause requiring that any lawsuit be filed in the United States District Court for the district in which the insured property is located, that provision governs **venue only** and does not convert this private insurance contract into a federal policy or invoke federal preemption.

**SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISREPRESENTATION**

14. The forum-selection clause does not displace state substantive law and does not incorporate the NFIA, NFIP regulations, or federal common law as the governing law of the contract.

15. Because Plaintiff's claims arise from a **private insurance contract**, and not from a SFIP issued under the NFIA, federal preemption does not apply. Plaintiff's causes of action—including breach of contract and breach of the implied covenant of good faith and fair dealing—are governed by **California substantive law**, including California insurance statutes and common law remedies.

16. Defendants may not rely on the NFIA, NFIP regulations, or federal common law to limit liability, restrict available remedies, or shield itself from state-law causes of action arising from its conduct in handling Plaintiff's claim under this private flood insurance policy.

### IV.  FACTUAL ALLEGATIONS

### A. Property, Policy, and Covered Loss

17. Plaintiff purchased the Property, a single-family residence, in or about 2018. The Property was originally constructed in or about 1976.

18. Plaintiff maintained a valid flood insurance policy issued by Palomar (the "Policy"), including coverage for building property and Flood Coverage E – Loss of Use.

19. On or about January 20, 2023, a severe rainstorm struck Northern California, causing heavy rainfall and flooding/water intrusion at the Property and resulting in substantial damage.

**SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISPREPRESENTATION**

20. On or about March 10, 2023, additional water intrusion and damage were discovered arising from the same underlying conditions. Plaintiff contends this was part of the same loss event, although Defendants treated it as a separate claim/occurrence.

21. Plaintiff timely reported the loss and fully complied with all Policy conditions, including cooperation with inspections and documentation requests.

22. Palomar, through Sedgwick, has paid Plaintiff approximately $86,423.06 toward the claim.

23. Plaintiff submitted detailed estimates for remedial/corrective repairs totaling $189,070.25 and demanded $50,000.00 for loss of use under Flood Coverage E (together, the "Claimed Loss").

24. Defendants denied payment of the full Claimed Loss and asserted—post-hoc—that essential corrective repairs constitute non-covered "improvements," "betterment," or "upgrades," even though those terms are not used as operative exclusions in the Policy as Defendants applied them.

25. Plaintiff alleges she remains owed at least $152,647.19 in benefits and related covered amounts (subject to proof and the Policy's terms), including loss-of-use benefits.

---

**B. Onsite Inspections, Repair Justifications, and Named Claim Personnel**

26. On or about January 30, 2023, Sedgwick and Palomar conducted an onsite inspection attended by Plaintiff and Plaintiff's contractor GT Construction, including Gordon Tindall, and Sedgwick's field adjuster John Weber.

**SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISPREPRESENTATION**

27. During that inspection, GT Construction explained and justified corrective repairs necessary to remediate flood damage and stop ongoing water intrusion.

28. No Sedgwick or Palomar representative disputed the necessity, legitimacy, or flood-related nature of the proposed corrective repairs.

29. On or about March 27, 2023, Sedgwick and Palomar conducted a second onsite inspection attended by Plaintiff, GT Construction/Gordon Tindall, and John Weber.

30. During that inspection, GT Construction again explained and justified the same corrective repair scope in the presence of Defendants' representatives.

31. Defendants again raised no objection, concern, or reservation regarding coverage, exclusions, or alleged "betterment."

32. On or about April 25, 2023, GT Construction transmitted a written email to Weber and Defendants memorializing the prior inspections and reiterating the justification for the corrective repairs and the estimate scope.

33. On or about May 15, 2023, Plaintiff escalated concerns by text and/or written communication to Weber regarding mishandling, delay, and lack of transparency.

34. On or about May 17, 2023, Plaintiff had a telephone call with Weber to review GT Construction's estimate; Weber expressed no concerns with the scope or costs of the repairs identified by GT Construction.

35. On or about May 20, 2023, Plaintiff emailed Weber and other Palomar/Sedgwick personnel (including, among others, Hal Shuman, Christian Herrera, Flo Harder, and Duncan McClaren) detailing major concerns regarding delayed reimbursement and handling.

**SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISREPRESENTATION**

36. On or about June 2, 2023, Plaintiff again emailed the same group advising partial reimbursements were insufficient and Plaintiff would not sign a release of settlement.

37. On or about June 30, 2023, Plaintiff retained an independent contractor/consultant, Onne Broek, who inspected the Property and reviewed GT Construction's proposed repairs.

38. On or about November 22, 2023, Weber returned for a third site visit with Plaintiff and GT Construction/Gordon Tindall. Plaintiff requested prompt payment and proposed payment structures, including "pay-as-you-go" reimbursements per invoice or an upfront payment for the estimated total with later true-up; Defendants did not provide a clear written response.

39. On or about November 28, 2023 and December 28, 2023, Plaintiff sent detailed written communications to Weber and others again requesting a prompt, written reimbursement plan and confirming the large capital outlay required to prevent further damage.

40. On or about January 13, 2024, Broek finalized his review and issued a report confirming GT Construction's proposed repairs and itemized costs were appropriate and reasonable.

41. Plaintiff also communicated with Palomar personnel including Bob Sargent (who replaced Hal Shuman) about the prolonged claim history and the repeated justification provided to Weber, and Plaintiff was led to believe Palomar could reach a swift resolution.

**SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISPREPRESENTATION**

42. Defendants repeatedly changed/reassigned claim handlers and decision-makers, forcing Plaintiff to restart the process, re-explain the repairs, and re-submit documents—thereby prolonging delay and increasing out-of-pocket costs and loss of use.

### C. Explicit Promises of Line-by-Line Coverage Review and Implied Assurance of Payment

43. On or about January 30, 2023, during the onsite inspection, Sedgwick claims personnel—including adjusters acting on behalf of Palomar—affirmatively represented to Plaintiff that GT Construction's corrective repair scope would be reviewed line by line to determine which items were covered.

44. Sedgwick personnel further represented Plaintiff would be specifically advised in advance of any line items Defendants contended were not reimbursable, together with the policy basis for each such position.

45. During the same inspection, Sedgwick claims personnel affirmatively acknowledged that the corrective repairs were necessary to stop the water intrusion and implied that such corrective repairs would be paid as part of the covered loss, without disclosing exclusions, limitations, or any "betterment/improvement" position.

46. On or about February 6, 2023, Plaintiff requested in writing that Sedgwick provide a line-by-line coverage determination of GT Construction's scope and identify any excluded items with specific Policy citations.

SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISREPRESENTATION

47. On or about March 2, 2023, Plaintiff again requested Defendants identify which corrective repairs would not be paid, explain why, and cite applicable Policy provisions, emphasizing the need for guidance before time-sensitive repairs.

48. On or about April 12, 2023, Plaintiff again requested Defendants "go through the scope and tell me what you will not pay for and the policy reason why."

49. Despite repeated requests and express promises, Sedgwick—through its employees and claim personnel—failed to provide a meaningful line-by-line coverage analysis before Plaintiff commenced and continued repairs.

50. These representations and implied assurances were material and were made while Sedgwick controlled claim investigation and communications on Palomar's behalf. Defendants knew Plaintiff would rely on them in deciding whether and how to proceed with repairs necessary to mitigate ongoing damage.

51. In truth, Sedgwick never intended to pay for all corrective repairs necessary to stop the water intrusion and intended to delay disclosure of its reimbursement position until after Plaintiff incurred costs, thereby reducing Defendants' financial exposure.

**D. Concrete Payment History and Out-of-Pocket Funding (Reliance and Damages)**

52. Plaintiff was forced to proceed with corrective repairs to prevent further damage, including making substantial payments to GT Construction, including but not limited to payments on or about:

- April 26, 2023: $6,737.94

SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISPREPRESENTATION

- November 10, 2023: $23,019.00

- December 15, 2023: $31,467.02

- Additional payments thereafter (including those reflected in Plaintiff's communications and supporting documentation)

53. Defendants' delay and refusal to provide clear coverage guidance and payment mechanisms forced Plaintiff to fund repairs out of pocket, including liquidating assets and incurring tax consequences to keep remediation moving.

---

**E. Specific Written Denial/"Betterment" Narrative and Key Speaker Identification (Rule 9(b))**

54. On or about May 3, 2024, Sedgwick's examiner/adjuster R. Fachon Reed wrote to Plaintiff confirming she was the examiner making recommendations for coverage and instructing Plaintiff to direct payment/coverage inquiries to Reed. Reed also distinguished Weber as a field adjuster versus the examiner who makes coverage recommendations.

55. On or about July 5, 2024, Reed wrote to Plaintiff, in substance and in writing: "Your policy affords coverage to return damaged property to its pre-damaged state; it does not allow for improvements." Reed instructed Plaintiff to read the attached letter and review the estimate.

56. On or about July 30, 2024, Palomar's claims relationship specialist Flo Harder wrote acknowledging a difference between GT Construction's estimate and Sedgwick's and

SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISREPRESENTATION

referenced discussion that allegedly included "corrective repairs and betterment," again demanding "supporting documentation" such as code upgrade requirements.

57. On or about August 6, 2024, Palomar's Vice President for Property Claims Teresa Urban emailed Plaintiff a written denial/position statement asserting, among other things, that:

"The improvements and betterment that your contractor has listed and that you opted to have done were not covered under your policy."

Urban further invited submission of code upgrade information.

58. Defendants' stated basis—"improvements" / "betterment"—was applied as a retroactive justification after months of assurances and silence, despite Plaintiff's repeated requests for line-by-line coverage determinations and Policy citations before she incurred the costs.

59. Defendants repeatedly failed to identify the precise Policy provisions supporting their "betterment/improvement" rationale and failed to provide the promised advance line-item denial positions with citations.

---

**F. Misrepresentations About Claim File, Participants, and Transparency (Rule 9(b))**

60. On or about May 2023 and again during 2024 communications, Sedgwick through R. Fachon Reed and other claim personnel made statements minimizing or obscuring prior claim participants and communications.

SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISREPRESENTATION

61. Reed stated in writing, including:

"In regards to your 1st question, there were only 3 people on the call, your contractor, Mr. Weber, and myself."

Reed further claimed she was unable to determine earlier involvement because the file was reassigned to her late April/early May.

62. These statements were false and misleading because Sedgwick maintained a centralized claim file documenting multiple inspections, communications, participants, evaluations, and shifting positions—and Sedgwick, not Plaintiff, controlled access to and completeness of that file.

63. Defendants' concealment of claim-file participants, decision-makers, and the promised line-item coverage positions was material and intended to hinder Plaintiff's ability to dispute Defendants' later "betterment/improvement" narrative.

### G. Policy Language and Loss of Use

64. The Policy provides building property coverage settled at replacement cost without deduction for depreciation and obligates payment of the necessary amount to repair or replace the damaged building (subject to the Policy's terms).

65. The Policy further includes Flood Coverage E – Loss of Use, which provides that if a covered flood loss makes the dwelling unfit to live in, the Policy will pay up to $50,000.00 on an aggregate per-loss basis for covered loss-of-use categories.

66. Plaintiff provided financial information and documentation supporting loss of use for extended periods, including loss of use of material portions of the home, yet

**SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISPREPRESENTATION**

13 | P a g e

Defendants failed to pay loss-of-use benefits or provide a timely, reasoned coverage determination with Policy citations.

### H. Emotional Distress and Property Conditions (Causation and Damages)

67. Defendants' delays and shifting positions left Plaintiff living for an extended period in an unfinished construction zone and without the intended peace of mind flood insurance is meant to provide.

68. Plaintiff suffered severe distress, anxiety, sleep deprivation, and loss of enjoyment of life due to the prolonged inability to restore the home to safe, normal use, including impacts on family living arrangements and prolonged loss of functional bedrooms/bathrooms.

69. The damaged areas and ongoing conditions contributed to additional harms, including infestation issues (including rats/mice) requiring rodent control and the displacement/storage of personal property that was damaged or destroyed.

### I. Palomar's Knowledge, Agency, and Ratification

70. Sedgwick acted as Palomar's agent in claim administration, investigation, evaluation, communications, and coverage recommendations, and Palomar accepted the benefits of Sedgwick's conduct.

71. Palomar knew or should have known of Sedgwick's representations, omissions, delays, and shifting "betterment/improvement" rationale and ratified that conduct by

**SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISREPRESENTATION**

adopting Sedgwick's positions, failing to correct misrepresentations, and refusing to pay covered amounts.

72. Plaintiff is informed and believes, and on that basis alleges, that at all relevant times each defendant was the agent, servant, employee, and/or representative of each other defendant, acting within the scope of such agency and/or with later ratification, such that Defendants are responsible for the acts alleged herein.

---

**IV. CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**(Breach of Contract – Against Palomar Only)**

73. Plaintiff realleges paragraphs 1–72.

74. A contract of insurance existed between Plaintiff and Palomar (the Policy). Plaintiff performed all conditions or was excused from performance.

75. Palomar breached the Policy by failing to pay all covered benefits owed, including but not limited to: (a) covered corrective repairs necessary to restore the Property, and (b) covered loss-of-use benefits up to the Policy limits.

76. As a direct and proximate result of Palomar's breach, Plaintiff suffered damages including unpaid benefits, consequential damages, and interest.

**SECOND CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing – Against Palomar Only)**

SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISREPRESENTATION

15 | P a g e

77. Plaintiff realleges paragraphs 1–76.

78. Palomar, through Sedgwick, unreasonably delayed, obstructed, and mishandled the claim by fostering the false impression that essential corrective repairs would be covered while intentionally delaying disclosure of its true reimbursement position and later invoking a "betterment/improvement" rationale without timely, transparent line-item analysis and Policy citations.

79. Palomar's conduct deprived Plaintiff of the benefits of the Policy and caused foreseeable harm including increased costs, prolonged loss of use, and severe distress.

**THIRD CAUSE OF ACTION**

**(Intentional Misrepresentation and Concealment – Against Sedgwick and Palomar)**

73. Plaintiff realleges paragraphs 1–79.

74. Sedgwick, through its employees and claim personnel including John Weber (field adjuster) and R. Fachon Reed (examiner/coverage recommender), made material misrepresentations and omissions, including:

(a) promising a line-by-line coverage review and advance identification of denied items with Policy bases;

(b) implying the corrective repairs necessary to stop water intrusion would be paid;

(c) withholding or delaying disclosure of any "betterment/improvement" position until after Plaintiff incurred costs; and

SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISPREPRESENTATION

(d) making misleading statements that obscured claim participants and claim file contents.

75. Sedgwick made the representations without any present intent to perform and concealed material facts despite repeated written requests, intending to induce Plaintiff to proceed with costly time-sensitive repairs without knowing Defendants' true coverage position.

76. Plaintiff reasonably relied on Defendants' misrepresentations and omissions and was harmed as a direct and proximate result.

77. Palomar is jointly liable through agency, ratification, adoption of Sedgwick's positions, and acceptance of the benefits of Sedgwick's conduct.

---

**FOURTH CAUSE OF ACTION**

**(Unfair Competition – Bus. & Prof. Code § 17200 – Against Palomar Only)**

78. Plaintiff realleges paragraphs 1–77.

79. Palomar engaged in unlawful, unfair, and fraudulent business practices by adopting and benefitting from Sedgwick's deceptive claim-handling conduct, including delay, concealment, and post-hoc denial rationales lacking timely transparency and Policy support.

---

**V. PRAYER FOR RELIEF**

**Plaintiff prays for judgment as follows:**

80. Compensatory damages (including unpaid policy benefits)

SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISREPRESENTATION

17 | Page

81. Consequential damages

82. Restitution and disgorgement as allowed

83. Injunctive relief as appropriate

84. Pre- and post-judgment interest **JURISDICTION AND VENUE**

85. Costs and attorneys' fees (as allowed by law/Policy)

86. Punitive and exemplary damages pursuant to Civil Code § 3294, based on Defendants' oppression, fraud, and malice (including despicable conduct carried out with conscious disregard of Plaintiff's rights), Pending Request for Relief.

87. Such other relief as the Court deems just and proper

---

### VI. JURY DEMAND

88. Plaintiff demands a trial by jury on all issues so triable.

Dated: January 25, 2026      /s/*George D. Oliver*_____
George Oliver, Esq.
Kenneth Coren , Esq.
Attorneys for Plaintiff
MARY TAGLIAFERRI

**SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISPREPRESENTATION**

# EXHIBIT 1

**SECOND AMENDED COMPLAINT FOR DAMAGES: BREACH OF CONTRACT TO PAY A COVERED CLAIM; BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH AND FAIR DEALING; INTENTIONAL MISPREPRESENTATION**