UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY TAGLIAFERRI,<br><br>            Plaintiff,<br><br>    v.<br><br>PALOMAR SPECIALTY INSURANCE<br>COMPANY, et al.,<br><br>            Defendants. | Case No. 25-cv-02148-KAW<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION TO DISMISS**<br><br>Re: Dkt. No. 53 |

Plaintiff Mary Tagliaferri brings the instant action against Defendants Palomar Specialty Insurance Co. ("Palomar") and Sedgwick Claims Management Services ("Sedgwick"), alleging that Defendants failed to pay the total amount due under an insurance policy. (Second Amend. Compl. ("SAC") ¶ 25, Dkt. No. 50.) Pending before the Court is Defendants' motion to dismiss the operative complaint. (Defs.' Mot. to Dismiss, Dkt. No. 53.)

The Court previously deemed this matter suitable for disposition without a hearing pursuant to Civil Local Rule 7-1(b). (Dkt. No. 57.) Having considered the parties' filings and the relevant legal authorities, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff is the owner of a property located in San Anselmo, California ("Subject Property." (SAC ¶ 1.) The Subject Property is covered by a flood insurance policy (the "Policy") issued by Defendant Palomar, with claims administered by Defendant Sedgwick. (SAC ¶¶ 3-4.) The Policy provides building property coverage at replacement cost without depreciation, and requires payment of the necessary amount to repair or replace the damaged building. (SAC ¶ 64.) The

United States District Court
Northern District of California

Policy also includes Flood Coverage E -- Loss of Use, which provides up to $50,000 for loss of use if the flood loss makes the property unfit for habitation.  (SAC ¶ 65.)

In January 2023, a severe rainstorm caused flooding and water intrusion at the Subject Property.  (SAC ¶ 20.)  Although Plaintiff submitted detailed estimates for remedial repairs in the amount of $189,070.25 and demanded $50,000 for loss of use of the Subject Property, Defendants denied payment of the full amount, claiming that the repairs included non-covered "improvements," "betterments," and "upgrades."  (SAC ¶¶ 23-24.)

Plaintiff provides a timeline of her interactions with Defendants.  On January 30, 2023, Sedgwick's field adjuster, John Weber, conducted an onsite inspection with Plaintiff and Plaintiff's contractor.  (SAC ¶ 26.)  During the inspection, Plaintiff's contractor explained and justified the corrective repairs, and Defendants did not dispute the need.  (SAC ¶¶ 27-28.)  Instead, "Sedgwick claims personnel affirmatively acknowledged that the corrective repairs were necessary to stop the water intrusion and implied that such corrective repairs would be paid as part of the covered loss[.]"  (SAC ¶ 45.)  Additionally, "Sedgwick claims personnel" represented to Plaintiff that the corrective repair scope would be reviewed line by line to determine which items were covered.  (SAC ¶ 43.)  That personnel also represented that Plaintiff would be advised in advance of any line items Defendants believed were not reimbursable, together with the policy basis for each position.  (SAC ¶ 44.)

On February 6, 2023, Plaintiff requested that Defendant Sedgwick provide a line-by-line coverage determination of the scope of corrective repairs and identify any excluded items.  (SAC ¶ 46.)  On March 2, 2023, Plaintiff again requested that Defendants identify which corrective repairs would not be paid and explain why.  (SAC ¶ 47.)

On March 27, 2023, Mr. Weber conducted a second onsite inspection, during which Plaintiff's contractor again explained and justified the same corrective repairs.  (SAC ¶¶ 29-30.)  Defendants again raised no objections.  (SAC ¶ 31.)  On April 12, 2023, Plaintiff requested that Defendants "go through the scope and tell me what you will not pay for and the policy reason why."  (SAC ¶ 48.)  On April 25, 2023, Plaintiff's contractor sent an e-mail to Mr. Weber, memorializing the prior inspections and reiterating the need for the corrective repairs.  (SAC ¶ 32.)

On April 26, 2023, Plaintiff paid $6,737.94 to her contractor.  (SAC ¶ 52.)  On May 17, 2023, Plaintiff had a telephone conversation with Mr. Weber, during which Mr. Weber expressed no concerns with the scope of repair.  (SAC ¶ 34.)

On November 10, 2023, Plaintiff paid $23,019.00 to her contractor.  (SAC ¶ 52.)  On November 22, 2023, Mr. Weber conducted a third onsite inspection, and Plaintiff requested prompt payment and proposed payment structures such as reimbursement per invoice.  (SAC ¶ 38.)  Defendants did not provide a clear written response.  On November 28, 2023, Plaintiff wrote Mr. Weber and others, requesting a prompt, written reimbursement plan.  (SAC ¶ 39.)  On November 15, 2023, Plaintiff paid $31,467.02 to her contractor.  (SAC ¶ 52.)  On December 28, 2023, Plaintiff again wrote Mr. Weber and others, requesting a prompt, written reimbursement plan.  (SAC ¶ 39.)

At an unknown point, Plaintiff communicated with Defendant Palomar's personnel, complaining about the prolonged claim history.  (SAC ¶ 41.)  Plaintiff was "led to believe Palomar could reach a swift resolution."  (SAC ¶ 41.)

In May 2023 and throughout 2024, Defendant Sedgwick through examiner/adjuster R. Fachon Reed "and other claim personnel" made statements minimizing or obscuring prior claim participants and communications, including a statement by Ms. Reed at an unknown time that, "In regards to your 1st question, there were only 3 people on the call, your contractor, Mr. Weber, and myself."  (SAC ¶¶ 60-61.)

On May 3, 2024, Ms. Reed reached out to Plaintiff, stating that she was the examiner making recommendations for coverage and instructing Plaintiff to direct payment and coverage inquiries to her.  (SAC ¶ 54.)  On July 5, 2024, Ms. Reed wrote Plaintiff, stating: "Your policy affords coverage to return damaged property to its pre-damaged state; it does not allow for improvements."  (SAC ¶ 55.)  On July 30, 2024, Defendant Palomar's claims relationship specialist, Flo Harder, acknowledged the difference between the estimate by Plaintiff's contractor and Defendant Sedgwick's determination, referencing discussion that allegedly included "corrective repairs and betterment."  (SAC ¶ 56.)  On August 6, 2024, Defendant Palomar's Vice President for Property Claims, Teresa Urban, e-mailed Plaintiff a written denial, asserting that the

United States District Court
Northern District of California

improvements and betterments were not covered under the policy.  (SAC ¶ 57.)

### B.   Procedural Background

On March 3, 2025, Plaintiff filed the instant action.  (Dkt. No. 1.)  On June 26, 2025, Plaintiff filed a first amended complaint.  (Dkt. No. 25.)  On July 10, 2025, Defendants filed a motion to dismiss and a motion to strike the punitive damages request; Defendants did not seek dismissal of the breach of contract and breach of the covenant of good faith and fair dealing claims against Defendant Palomar.  (Dkt. Nos. 27, 28.)  Plaintiff did not oppose the motion to strike the punitive damages request, even after the Court issued an order to show cause.  (*See* Dkt. No. 29.)

On December 1, 2025, the Court granted Defendants' motion to dismiss, but gave Plaintiff leave to amend the intentional misrepresentation claim.  (Dismissal Order at 13, Dkt. No. 41.)  The Court also struck Plaintiff's request for punitive damages with prejudice.  (*Id.*)  The Court gave Plaintiff 30 days to file an amended complaint.

On December 30, 2025, Plaintiff filed a Second Amended Complaint.  (Dkt. No. 46.)  The parties then stipulated to the filing of the operative complaint, which Plaintiff then filed on January 26, 2026 but confusingly again captioned as the Second Amended Complaint.  (*See* Dkt. Nos. 47, 50.)  Therein, Plaintiff asserted claims for: (1) breach of contract as to Defendant Palomar only, (2) breach of the implied covenant of good faith and fair dealing as to Defendant Palomar only, (3) intentional misrepresentation and concealment as to both Defendants, and (4) unfair competition under California Business & Professions Code § 17200 as to Defendant Palomar only.  Plaintiff also sought restitution, injunctive relief, and punitive damages.  (SAC ¶¶ 82-83, 86.)

On February 26, 2026, Plaintiff filed a purported "Supplemental Second Amended Complaint" ("Supplemental SAC") without leave of court on February 26, 2026.  (Dkt. No. 51.)  The Court subsequently struck the Supplemental SAC as improper.  (Dkt. No. 52.)

On February 9, 2026, Defendants filed the instant motion to dismiss.  On February 23, 2026, Plaintiff filed an opposition.  (Pl.'s Opp'n, Dkt. No. 54.)  On March 2, 2026, Defendants filed a reply.  (Defs.' Reply, Dkt. No. 56.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based

4

United States District Court
Northern District of California

on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . .  When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

## III.    DISCUSSION

### A.    Procedural Complaints

First, the Court acknowledges the parties' complaints about the behavior of opposing counsel with respect to the Supplemental SAC. (Rice Decl., Dkt. No. 53-1; Pl.'s Opp'n at 2-3; Supp. Rice Decl., Dkt. No. 56-1.) The parties generally agreed to allow Plaintiff to file an amended complaint and Defendants drafted a proposed stipulation to that effect, but Plaintiff then filed the Supplemental SAC without approving the stipulation. (Rice Decl. ¶¶ 8-9; Pl.'s Opp'n at 3.) After the Court struck the Supplemental SAC as improperly filed, Defendants declined to agree to the filing of an amended complaint and instead proceeded with the instant motion to dismiss. (Pl.'s Opp'n at 3; Supp. Rice Decl. ¶¶ 7-9.) Thus, it appears that the Court is being required to resolve a motion to dismiss that may not have wholly been necessary if the parties had properly met and conferred. Going forward, the parties are advised to preserve the Court's limited judicial resources by meeting and conferring.

Adding to the confusion is the fact that Plaintiff's opposition purports to rely "on the same factual allegations and supports the same causes of action as those set forth in Plaintiff's Proposed Supplemental Second Amended Complaint (Dkt. 51)." (Pl.'s Opp'n at 4.) The operative complaint, however, is the "Second Amended Complaint" at Dkt. No. 50. The Court will not consider a pleading that was stricken. Further, Plaintiff's opposition fails to include any citations to the specific paragraphs of either complaint. This is improper, as it puts the burden on the Court to review Plaintiff's complaint and determine which specific paragraphs Plaintiff is relying on. This is not the Court's job. *See Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) ("judges are not like pigs, hunting for truffles buried in briefs").

Plaintiff is forewarned that future failure to rely on the correct pleading and to provide specific citations to the record will not be tolerated.

### B.    Scope of Leave to Amend

"As a threshold issue," Defendants seek dismissal of the operative complaint because it "exceeds the scope of leave" granted by the Court's December 1, 2025 order. (Defs.' Mot. to Dismiss at 6.) Specifically, Defendants complain that the operative complaint adds a new claim

for unfair competition, again requests punitive damages, and omits previously pled facts while asserting new ones beyond those supporting the intentional misrepresentation claim. (*Id.* at 7.)

In response, Plaintiff consents to striking the request for punitive damages and the unfair competition claim. (Pl.'s Opp'n at 4.) As to the factual allegations, Plaintiff correctly points out that the Court did not prohibit her from adding factual allegations that support the surviving claims. (*Id.* at 6.) The Court is not inclined to dismiss claims (which were not previously challenged) simply because Plaintiff added or omitted previously pled facts. Thus, the Court will address Defendants' remaining arguments on the merits.

### C.    First Claim: Breach of Contract

The elements of a breach of contract claim under California law are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Defendant argues that the complaint must be dismissed because Plaintiff fails to attach the Policy or plead the Policy's terms "*in haec verba* (verbatim)." (Defs.' Mot. to Dismiss at 9.)

"The argument that a plaintiff must attach a copy of a contract or recite its terms verbatim in order to state a claim for breach of contract has been squarely rejected by California courts." *Golden State Equity Inv'rs, Inc. v. All. Creative Grp., Inc.*, No. 16cv1694-MMA (DHB), 2017 U.S. Dist. LEXIS 53974, at *10 (S.D. Cal. Apr. 7, 2017); *see also Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 401 (2015) (rejecting argument that a plaintiff is required "to attach the contract or to plead its terms verbatim"). Rather, "[t]he correct rule is that 'a plaintiff may plead the legal effect of the contract rather than its precise language.'" *Miles*, 236 Cal. App. 4th at 402 (quoting *Construction Protective Servs., Inc. v. TIG Specialty Ins. Co.*, 29 Cal. 4th 189, 199 (2002)).

Plaintiff does so here. Plaintiff has alleged the existence of the Policy and its legal effect, *i.e.*, that the Policy provides building property coverage at replacement cost and loss of use. (SAC ¶¶ 4, 64-65.) Plaintiff further alleges that she maintained this coverage, but that Defendants breached by failing to pay all of the benefits owed, including all covered corrective repairs and the loss of use benefits. (SAC ¶¶ 18, 75.) This caused Plaintiff damages in the form of the unpaid

United States District Court
Northern District of California

United States District Court
Northern District of California

benefits. (SAC ¶ 76.) This is sufficient to provide notice to Defendant Palomar. *Contrast with JJ Mktg. Grp. Inc. v. Ent*, No. 2:22-cv-01657-FWS (GJSx), 2022 U.S. Dist. LEXIS 213065, at *10 n.4 (C.D. Cal. Aug. 1, 2022) (finding inadequate allegation of breach of contract where the complaint only alleged that written contracts existed between the parties).

In the reply, Defendants argue that Plaintiff fails to identify the Policy terms that would cover the "corrective repairs" because these were improvements designed to prevent future flooding. (Defs.' Reply at 3.) The dispute about whether the corrective repairs were repairs covered by the Policy or improvements that would not be covered appears to the crux of the factual dispute between the parties, and is not a proper ground for dismissal.

Accordingly, the Court denies Defendants' motion to dismiss the breach of contract claim.

### D.    Second Claim: Implied Covenant of Good Faith and Fair Dealing

Defendants move for dismissal of the implied covenant of good faith and fair dealing claim based on the failure to state a breach of contract claim. (Defs.' Mot. to Dismiss at 11; Defs.' Reply at 5.) As the Court has found that the breach of contract claim is adequately alleged, the Court denies Defendants' motion to dismiss the breach of implied covenant claim.

### E.    Third Claim: Intentional Misrepresentation and Concealment

Per California law, intentional misrepresentation or concealment "require[s] a showing of five elements: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1233 (9th Cir. 2024). Additionally, claims grounded in fraud must satisfy Rule 9(b), which "demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (cleaned up). Thus, a plaintiff must allege "the who, what, when, where, and how of the misconduct charged." *Id.* (internal quotation omitted).

Here, Plaintiff asserts the misrepresentations and omissions included: (1) promising a line by line coverage review and advance identification of denied items, (2) implying that corrective

8

United States District Court
Northern District of California

repairs necessary to stop water intrusion would be paid, (3) withholding or delaying disclosure of any "betterment/improvement" position until after Plaintiff incurred costs, and (4) making misleading statements that obscured claim participants and claim file contents. (Compl. ¶ 74.) In the opposition, however, Plaintiff now asserts that the material misrepresentations and omissions are: (1) promising a line by line coverage analysis with policy citations, (2) representing that corrective repairs would be covered, (3) discussing and agreeing upon payment options during the November 22, 2023 site visit, (4) approving an additional settlement payment by e-mail on March 6, 2024, and (5) minimizing or concealing Defendant Sedgwick's true coverage position while directing Plaintiff to proceed with repairs. (Pl.'s Opp'n at 14-15.) Plaintiff not only fails to provide citations to the operative (or any) complaint, but also lumps the analysis of all these alleged misrepresentations together without identifying the specific statements they are purportedly based on and how Plaintiff relied upon each statement to her detriment. (*Id.* at 14-17.)

Many of these assertions appear to be omitted from or even contrary to the operative complaint. For example, there are no allegations about a March 6, 2024 settlement payment in the operative complaint. Likewise, Plaintiff asserts in the opposition that Defendant agreed to payment options during the November 22, 2023 site inspection, but alleges in the operative complaint that after Plaintiff requested prompt payment and proposed payment structures, "Defendants did not provide a clear written response." (SAC ¶ 38.) Plaintiff also asserts in the opposition that Defendants "represent[ed] that corrective repairs would be covered," while the operative complaint only asserts that Defendants "impl[ied]" necessary corrective repairs would be covered. (SAC ¶¶ 27, 29, 34, 74.) Dismissal of the intentional misrepresentation claim is warranted on these grounds alone.

Additionally, a review of the operative complaint reveals numerous issues. For example, with respect to the promise of a line by line analysis, Plaintiff alleges that on January 30, 2023, unspecified "Sedgwick claims personnel" represented that the corrective repair scope would be reviewed line by line to determine which items were covered. (SAC ¶ 43.) "When a claim of fraud is made against a corporation," however, "the complaint 'must set forth specific names of the persons who made the misrepresentation, their authority to speak for the corporation, to whom

they spoke, what they said or wrote, and when it was said or written.'" *Banaga v. Taylor Bean Mortg. Co.*, No. 11-4007 (JSC), 2011 U.S. Dist. LEXIS 122804, at *15 (N.D. Cal. Oct. 24, 2011) (quoting *Tarmann v. State Farm Mutual Auto Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991)). Further, Plaintiff fails to explain how she relied on the statement to her detriment. (*See* Def.'s Reply at 8.) Rather, Plaintiff alleges that after this alleged promise by an unspecified claims personnel, she requested the line by line analysis on February 6, March 2, and April 12, 2023. (SAC ¶¶ 46-48.) Plaintiff then made payments to her contractor on April 26, November 10, and December 2023, despite apparently never receiving the requested analysis. (SAC ¶ 52.) Plaintiff further alleges that she made the payments to her contractor because she was "forced to proceed with corrective repairs to prevent further damage," which also contradicts her assertion that she made the payments in reliance on the promise for a line by line by line analysis. Thus, it is not apparent that Plaintiff's damages were caused by her reliance on this alleged promise.

Many other allegations also appear to be lacking all of the requirements of Rule 9(b). For example, Plaintiff fails to specify who failed to "provide a clear written response" when Plaintiff requested prompt payment and proposed payment structures in November 2023. (SAC ¶ 38.) Plaintiff also fails to specify which of Defendant Sedgwick's claim personnel "affirmatively acknowledged that the corrective repairs were necessary to stop the water intrusion" and failed to disclose exclusions on January 30, 2023. (SAC ¶ 45.) Plaintiff complains about a statement made by Ms. Reed that there were only three people on a call, but fails to say when this specific statement was made. (SAC ¶¶ 60-61.) She further alleges that the statement was false because Defendant Sedgwick maintained a centralized file documenting the inspections, but it is unclear how this contradicts Ms. Reed's statement about there only being three people on a call. (SAC ¶ 62.) Plaintiff also fails to explain how she relied upon this statement about there only being three people on a call to her detriment.

In short, Plaintiff's complaint fails to adequately allege a claim for intentional misrepresentation or omission, and the complaint and opposition are contradictory and lacking in specific factual support or legal analysis. While the Court has some doubts, the Court cannot say for certain that amendment is futile. Accordingly, the Court will give Plaintiff one final chance to

United States District Court<br>Northern District of California

amend this claim.  Plaintiff will need to comply with Rule 9(b) in full, including identifying who made which specific statements and explaining how those specific statements constitute intentional misrepresentation.  Should a motion to dismiss be filed, Plaintiff will have the burden of citing to specific paragraphs in the correct complaint and providing specific legal analysis.

### F.    Fourth Claim: Unfair Competition

Again, Plaintiff agrees to the dismissal of the unfair competition claim.  (*See* Pl.'s Opp'n at 4.)  Plaintiff, however, also appears to request leave to amend this claim "based on facts developed through discovery and clarified through Defendants' motion practice."  (*Id.* at 19.)  Plaintiff provides no factual or legal basis in support for this relief.  Accordingly, the unfair competition claim is dismissed with prejudice.

Additionally, Defendants request that Plaintiff's requests for restitution, disgorgement, and injunctive relief be dismissed because they are equitable remedies related to Plaintiff's unfair competition claim.  (Defs.' Mot. to Dismiss at 16.)  Plaintiff does not respond to this issue.  Accordingly, the Court dismisses these requests for equitable remedies.

### G.    Punitive Damages

Plaintiff agrees to striking the request for  punitive damages.  (Pl.'s Opp'n at 19.)  At the same time, Plaintiff requests leave to seek relief from the Court's prior order striking the punitive damages, arguing that this was done "on procedural grounds and without a determination on the merits."  (*Id.*)  As a reminder, the "procedural grounds" was Plaintiff's failure to file an opposition to Defendants' motion to strike the request for punitive damages even after the Court issued an order to show cause.  (*See* Dismissal Order at 4.)

Plaintiff's request for affirmative relief in her opposition is improper.  *See Benedict v. Hewlett-Packard Co.*, No. 13-cv-00119-BLF, 2016 U.S. Dist. LEXIS 42810, at *6 n.2 (N.D. Cal. Mar. 29, 2016) ("[A]n opposition is not an appropriate vehicle for seeking relief[.]").  In any case, Plaintiff provides no legal basis for seeking relief and continues to provide no explanation for why she failed to file her opposition in the first place.  Plaintiff also provides no information to suggest that she would now be able to adequately plead a request for punitive damages.  Thus, Plaintiff's requested relief is not warranted.

11

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.  The Court DISMISSES Plaintiff's unfair competition claim and requests for punitive damages, restitution, disgorgement, and injunctive relief without leave to amend.  The Court DISMISSES Plaintiff's intentional misrepresentation claim with leave to amend.  The Court DENIES the motion as to the breach of contract and breach of the covenant of good faith and fair dealing claims against Defendant Palomar.

Plaintiff may file an amended complaint within **30** days of the date of this order.  No new claims may be added.

IT IS SO ORDERED.

Dated: April 6, 2026

_____
KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

12