UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARY TAGLIAFERRI,
Plaintiff,
v.
PALOMAR SPECIALTY INSURANCE COMPANY, et al.,
Defendants.

Case No. 25-cv-02148-KAW

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 62

Plaintiff Mary Tagliaferri brings this action against Defendants Palomar Specialty Insurance Co. ("Palomar") and Sedgwick Claims Management Services ("Sedgwick"), alleging that Defendants failed to pay the total amount due under an insurance policy. (Third Amend. Compl. ("TAC") ¶ 25, Dkt. No. 61.) Pending before the Court is Defendants' motion to dismiss the operative complaint. (Defs.' Mot. to Dismiss, Dkt. No. 62.)

The Court previously deemed this matter suitable for disposition without a hearing pursuant to Civil Local Rule 7-1(b). (Dkt. No. 69.) Having considered the parties' filings and the relevant legal authorities, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

## I. BACKGROUND

Plaintiff is the owner of a property in San Anselmo, California ("Subject Property"). (TAC ¶ 1.) The Subject Property is covered by a flood insurance policy (the "Policy") issued by Defendant Palomar, with claims administered by Defendant Sedgwick. (SAC ¶¶ 3-4.)

In January 2023, a severe rainstorm caused flooding and water intrusion at the Subject Property. (TAC ¶ 20.) Although Plaintiff submitted detailed estimates for remedial repairs in the amount of $189,070.25, Defendants have only paid $86,423.06 to date, denying the remainder of

United States District Court
Northern District of California

United States District Court
Northern District of California

the claim as non-covered improvements, betterments, and upgrades. (TAC ¶¶ 24-25.) Ultimately, the total cost of the project was $267,214.01, with Plaintiff asserting she is still owed $180,790.95 for the repairs. (TAC ¶ 26.)

Plaintiff provides the following timeline of her interactions with Defendants. On January 30, 2023, Defendant Sedgwick's field adjuster, John Weber, conducted an onsite inspection with Plaintiff and Plaintiff's contractor. (TAC ¶ 29.) Although Plaintiff' contractor explained the scope of repair, Mr. Weber did not dispute the necessity of the proposed repairs. (TAC ¶¶ 30-31.) Instead, Mr. Weber promised a line-by-line coverage review and advance notification of any non-reimbursable items with Policy citations. (TAC ¶ 31.)

On February 6, 2023 and March 2, 2023, Plaintiff requested the line-by-line coverage review, but did not receive it. (TAC ¶ 32.) On March 27, 2023, Mr. Weber conducted a second onsite inspection with Plaintiff's contractor, and again failed to raise any objection to the proposed repairs. (TAC ¶ 33-34.) Mr. Weber also did not raise any issue regarding betterments or exclusions under the Policy. (TAC ¶ 34.)

On April 12, 2023, Plaintiff again requested the line-byline coverage review, but did not receive it. (TAC ¶ 32.) When funding for the repairs failed to come, Plaintiff wrote to Mr. Weber and "Corporate" on April 25, 2023, repeating the justifications for the needed repairs. (TAC ¶ 35.) Plaintiff did not receive a response, and on May 15, 2023, Plaintiff escalated her concerns by text and/or written communication regarding the delay. (TAC ¶ 36.)

On May 17, 2023, Plaintiff had a phone call with Mr. Weber to review the estimate. (TAC ¶ 37.) Mr. Weber did not raise any concerns with the scope or cost of the proposed repairs. (TAC ¶ 37.) On May 20, 2023, Plaintiff e-mailed Mr. Weber, Hal Schuman, Christian Herrera, Flo Harder, and Duncan McClaren regarding the delayed reimbursement. (TAC ¶ 38.) On June 2, 2023, Plaintiff e-mailed the same group, stating that partial reimbursement was insufficient and that she would not sign a release of settlement. (TAC ¶ 39.)

On November 22, 2023, Mr. Weber attended a third site visit. (TAC ¶ 41.) Plaintiff and Mr. Weber reviewed payment options, including payments for costs that were incurred or full payment of the estimated cost plus a final payment for unpaid work. (TAC ¶ 41.) Mr. Weber

United States District Court
Northern District of California

stated one of these options would be implemented. (TAC ¶ 41.) During the meeting, Defendant Sedgwick's adjuster, Mr. Shuman, was contacted and informed of the details of the meeting in a voicemail. (TAC ¶ 41.) Plaintiff also requested that Mr. Shuman call her back, as she had been informed that Mr. Shuman had the authority to pay the outstanding claim. (TAC ¶ 41.) Mr. Shuman did not return the call. (TAC ¶ 41.)

Plaintiff requested that one of the two proposed options be implemented, but did not receive a clear written response. (TAC ¶ 42.) On November 28, 2023, Plaintiff requested prompt payment. (TAC ¶ 43.) Having not heard back from Mr. Shuman, on January 17, 2024, Plaintiff spoke to Robert Sargent regarding her claim. (TAC ¶ 45.) Around that time, Plaintiff submitted a comprehensive repair estimate to Defendants. (TAC ¶ 46.)

On March 6, 2024, Mr. Weber approved the release of an additional $45,795.36, bringing Defendant Palomar's total payments to $82,433.92. (TAC ¶ 47.) Plaintiff informed Mr. Weber that she was still owed $161,433.92. (TAC ¶ 47.) After Mr. Weber spoke to Plaintiff's contractor, he stated he would incorporate his findings into an upcoming report. (TAC ¶ 48.) Mr. Sargent also acknowledged Plaintiff's communications. (TAC ¶ 48.) Neither Defendant disclosed any betterment or exclusion position during these communications. (TAC ¶ 49.) Plaintiff asserts that relying on these approvals and representations, she continued paying for the repairs from her personal bank account and by selling shares of stock, thus incurring significant financial losses and tax consequences. (TAC ¶¶ 50, 112(e).)

On March 13, 2024, Mr. Weber stated that he had spoken with Plaintiff's contractor and would be including his findings in a forthcoming report to the claims handler. (TAC ¶ 53.) Plaintiff also submitted further documentation to support her repair estimate. (TAC ¶ 53.)

On May 3, 2024, the newly assigned adjuster, R. Fachon Reed, informed Plaintiff that she had begun a preliminary review of the estimate and that she was the examiner who would be making recommendations for coverage. (TAC ¶ 54.) Ms. Reed instructed Plaintiff to direct payment and coverage inquiries to her, and stated that Mr. Weber was a field adjuster, not the examiner who would make coverage recommendations. (TAC ¶ 54.)

On May 15, 2024, Plaintiff demanded that Defendant Sedgwick provide full payment

within 30 days. (TAC ¶ 55.) On July 5, 2024, Ms. Reed informed Plaintiff of the coverage decision, for the first time raising the exclusion for improvements. (TAC ¶ 59.) On July 6, 2024, Plaintiff requested contact information for every individual involved in her claim. (TAC ¶ 60.)

On July 25, 2024, Defendant Palomar's claims relationship specialist, Ms. Harder, reached out and expressed interest in discussing Plaintiff's concerns about her claim. (TAC ¶ 61.) On July 30, 2024, Ms. Harder acknowledged the difference between Plaintiff's contractor's estimate and Defendant Sedgwick's estimate, and informed Plaintiff that betterments were not reimbursable and that Plaintiff would need to provide document to support code upgrade requirements. (TAC ¶ 62.) On August 6, 2024, Defendant Palomar's Vice President, Teresa Urban, formally asserted a betterment denial. (TAC ¶ 63.)

On March 3, 2025, Plaintiff filed the instant action. (Dkt. No. 1.) On June 26, 2025, Plaintiff filed a first amended complaint. (Dkt. No. 25.) On July 10, 2025, Defendants filed a motion to dismiss certain claims. (Dkt. Nos. 27, 28.) On December 1, 2025, the Court granted Defendants' motion to dismiss, but gave Plaintiff leave to amend the intentional misrepresentation claim. (Dkt. No. 41.) After Plaintiff filed an amended complaint, Defendants moved to dismiss. (Dkt. Nos. 46, 53.) On April 6, 2026, the Court granted in part and denied in part Defendants' motion to dismiss, again giving Plaintiff "one final chance to amend" the intentional misrepresentation claim. (Dismissal Order at 10.) The Court dismissed the unfair competition claim and requests for punitive damages, restitution, disgorgement, and injunctive relief without leave to amend. (*Id.* at 12.)

On May 6, 2026, Plaintiff filed the operative complaint, alleging claims for: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) intentional misrepresentation and concealment. Plaintiff also sought restitution, disgorgement, and injunctive relief. (TAC ¶¶ 120, 121.) On May 20, 2026, Defendants filed the instant motion to dismiss the intentional misrepresentation and concealment claim, as well as the requests for restitution, disgorgement, and injunctive relief. On June 1, 2026, Plaintiff filed an opposition. (Pl.'s Opp'n, Dkt. No. 63.) On June 10, 2026, Defendants filed a reply. (Defs.' Reply, Dkt. No. 64.)

United States District Court
Northern District of California

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

## III. DISCUSSION

### A. Intentional Misrepresentation and Concealment

Per California law, intentional misrepresentation or concealment "require[s] a showing of five elements: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1233 (9th Cir. 2024). Additionally, claims grounded in fraud must satisfy Rule 9(b), which "demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (cleaned up). Thus, a plaintiff must allege "the who, what, when, where, and how of the misconduct charged." *Id.* (internal quotation omitted).

Here, Plaintiff asserts two alleged misrepresentations: (1) Mr. Weber's promise to conduct a line-by-line coverage review and provide advance identification of any non-reimbursable items with Policy citations, and (2) Defendants' failure to disclose their intent to deny substantial portions of the repairs as betterment or improvements during Mr. Weber's site inspections and in the March 2024 communications. (Pl.'s Opp'n at 8-10.)

#### i. Line-By-Line Coverage

Here, the Court finds that Plaintiff has adequately identified the alleged misrepresentation, namely Mr. Weber's January 30, 2023 promise of a line-by-line coverage review and advance identification of any non-reimbursable items with Policy citations. (TAC ¶ 31.) Plaintiff further alleges that she never received the promised review and advance identification. (TAC ¶ 74.)

In the prior dismissal order, however, the Court noted its skepticism that Plaintiff could establish reliance on the promise of the line-by-line coverage review given that she requested the line-by-line coverage review on February 6, 2023, March 2, 2023, and April 12, 2023. (Dismissal Order at 10.) She then made payments on April 26, November 10, and December 15, 2023, despite never receiving the requested coverage review. (*Id.*; *see* Second Amend. Compl. ("SAC") ¶ 52, Dkt. No. 50.) The Court further observed that Plaintiff had alleged that she made the

payments because she was "forced to proceed with corrective repairs to prevent further damage," contradicting her assertion that she made the payments in reliance on the promise for the line-by-line analysis. (*See* Dismissal Order at 10; SAC ¶ 52.) Rather than address these issues, Plaintiff simply removed the allegations regarding the payment dates and her reasons for making those payments from the operative complaint.

The Court finds that Plaintiff still does not adequately allege reliance. Plaintiff alleges reliance on "representations, omissions, and concealment of material facts," but does not explain how she reasonably relied on the promise for the line-by-line coverage review. (*See* TAC ¶ 111.) Rather, Plaintiff continues to allege that she requested the promised analysis on February 6, 2023, March 2, 2023, and April 12, 2023, but that she never received them. (TAC ¶ 32.) Plaintiff also alleges that starting on May 15, 2023, she began escalating her concerns regarding the "mishandling, delay, and lack of transparency" of the handling of her claim. (TAC ¶ 36.) Plaintiff further e-mailed Mr. Weber, Mr. Schuman, Ms. Herrera, Ms. Harder, and Mr. McClaren regarding her concerns about the handling of her claims. (TAC ¶¶ 38, 39.) In short, based on these allegations, it is unclear how Plaintiff *reasonably* relied on the promise of a line-by-line coverage review when she knew that Defendants had repeatedly failed to provide the coverage review, having requested such reviews and then complained about the mishandling of her claim after not receiving the review.

Accordingly, the Court finds that Plaintiff has not adequately pled a claim based on Mr. Weber's promise of a line-by-line analysis. Thus, to the extent the intentional misrepresentation claim is based on this affirmative statement, it is dismissed with prejudice.

**ii. Failure to Disclose Intent to Deny Claim**

Plaintiff also brings an intentional misrepresentation claim based on Defendants' alleged failure to disclose their intent to deny a significant part of her claim as non-covered betterments and improvements. This is effectively a fraudulent concealment claim. (*See* Pl.'s Opp'n at 21.) "The elements of a fraudulent concealment claim are similar to that of an intentional misrepresentation claim," except that "[i]f an alleged fraud is based upon concealment, it is actionable only if the defendant had a duty to disclose the concealed fact." *Meyers v. McDonalds*

*USA LLC*, EDCV 23-2589 JGB (SPx), 2025 U.S. Dist. LEXIS 35785, at *19 (C.D. Cal. Feb. 26, 2025) (internal quotation omitted). "There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts. *Bank of Am. Corp. v. Superior Court*, 198 Cal. App. 4th 862, 871 (2011) (internal quotation omitted).

The Court finds that Plaintiff has adequately alleged an intentional misrepresentation claim based on the concealment of Defendants' alleged intent to deny a significant part of her claim.

First, the Court finds that Plaintiff has established a duty to disclose this alleged intent. Plaintiff has alleged that Defendants only made a partial representation by representing that payments would be forthcoming, approving additional payments, and continuing negotiations regarding repair scope and costs without ever disclosing their intent to assert non-coverage for betterments and improvements. For example, Plaintiff received further payments on March 6, 2024 and had a number of conversations about the scope of the repairs and her claim with Mr. Weber and Mr. Sargent that same day, neither of whom informed Plaintiff or her contractor of any betterment exclusion. (TAC ¶¶ 47-49.) Considering these circumstances at the pleading stage, it is not implausible that the release of payments and discussions of next steps without any assertion of the possibility that Defendants would assert non-coverage for betterments and improvements could be misleading.

Additionally, courts have found that "California Insurance Code § 332 imposes a duty to disclose all facts within the insurer's knowledge which are or which it believes to be material to the contract and which the insured has not the means of ascertaining." *Freedom Transp., Inc. v. Travelers Cos.*, No. EDCV 16-213 JGB (SPx), 2016 U.S. Dist. LEXIS 203094, at *12 (C.D. Cal. Mar. 24, 2016); *see also Diaz v. First Am. Home Buyers Prot. Corp.*, 541 Fed. App'x 773, 774 (9th Cir. 2013). "This falls squarely within the second and third circumstances contemplated by California courts as creating a duty to disclose for purposes of liability for fraudulent concealment." *Freedom Transp., Inc.*, 2016 U.S. Dist. LEXIS 203094, at *12. In *Freedom*

United States District Court
Northern District of California

*Transport*, the district court found that a fraudulent concealment claim could proceed based on the insurer's failure to disclose the extent of its investigation, as well as whether it had interviewed witnesses or discovered facts favorable to the plaintiff. 2016 U.S. Dist. LEXIS 203094, at *16. Likewise here, it would appear that the failure to disclose an intent to assert a betterments or improvements defense would be a material fact that should have been disclosed, particularly given the stage of the investigation by March 6, 2024 and Mr. Weber's assertion that he would be incorporating his findings in an "upcoming report" (thus suggesting the investigation was reasonably far along). (TAC ¶ 48.)

Second, the Court finds Plaintiff has adequately pled knowledge and intent to defraud. "At the pleading stage, intent and knowledge may be alleged generally." *Krayzman v. Yalla Ventures, Inc.*, No. 2:24-CV-03610-AB-AS, 2024 U.S. Dist. LEXIS 193058, at *8 (C.D. Cal. Oct. 16, 2024); *see also Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) ("While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind -- or scienter -- of the defendants may be alleged generally."). "Under the more relaxed standard, the plaintiff need only plead the factual basis for the belief that the defendant possessed the required intent or knowledge." *Krayzman*, 2024 U.S. Dist. LEXIS 193058, at *8. Here, Plaintiff has alleged facts of how Defendants would have possessed the knowledge, including their investigation and site visits. Plaintiff has also alleged intent, including that Defendants intended to later characterize the repairs as non-covered betterments or improvements. (TAC ¶ 107(d).) This is sufficient at the pleading stage. *Compare with Krayzman*, 2024 U.S. Dist. LEXIS 193058, at *8-9 (finding adequate allegations of knowledge and intent where the plaintiff alleged that the defendant was the manufacturer and therefore in a position to know the quality of the product at issue but nevertheless made the claim knowing they were false and misleading).

Finally, the Court finds that Plaintiff has adequately pled reliance and damages. Plaintiff asserts that believing further reimbursement would be forthcoming, she continued the repair work, paying contractors and repair expenses out of her own personal funds by liquidating shares of stock and using personal bank accounts, thus incurring significant financial losses and tax consequences. (TAC ¶ 112(a)-(e).) Plaintiff also alleges that her reliance was reasonable given

United States District Court
Northern District of California

that Defendants had exclusive control over the coverage determination, and that she was never informed that the repairs would be denied despite repeatedly requesting clarification. (TAC ¶ 113(b)-(c).) Again, such allegations are sufficient at the pleading stage. *See Freedom Trans., Inc. v. Travelers Cos.* (*Freedom II*), No. EDCV 16-213 JGB (SPx), 2016 U.S. Dist. LEXIS 194836, at *12 (C.D. Cal. Aug. 11, 2016) (finding adequate allegation of reliance and damages where the plaintiff alleged that due to the insurer's concealment of the inadequate investigation into the plaintiff's claim, the plaintiff delayed paying its client, resulting in the plaintiff losing its business relationship with that client).

In opposition, Defendants argue that Plaintiff fails to allege when Defendants determined that specific items constituted non-covered improvements, who made the determination, what items were encompassed, when Defendants acquired the information, or when Defendants were obligated to disclose the information. (Defs.' Reply at 8.) Courts, however, have acknowledged that "Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge" because "[i]n such situations, plaintiffs can not be expected to have personal knowledge of the relevant facts." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Here, information about when Defendants made a specific decision would appear to be a question more appropriate for discovery.

Accordingly, the Court finds that Plaintiff may proceed with the fraudulent misrepresentation claim based on the alleged failure to disclose to Plaintiff that Defendants intended to deny a significant part of her claim as non-covered betterments and improvements.

**B. Restitution, Disgorgement, and Injunctive Relief**

Defendants also seek dismissal of Plaintiff's requests for restitution, disgorgement, and injunctive relief. (Defs.' Mot. to Dismiss at 15.) Defendants point out that these requests for relief were added to the second amended complaint in connection with her unfair competition claim, which the Court has dismissed with prejudice. (*See* Dismissal Order at 12.) Plaintiff, in turn, makes no argument regarding the propriety of this relief. Accordingly, the Court dismisses Plaintiff's requests for restitution, disgorgement, and injunctive relief with prejudice.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss. The Court GRANTS Defendants' motion to dismiss the requests for restitution, disgorgement, and injunctive relief. The Court DENIES Defendants' motion to dismiss the third claim to the extent it is based on the alleged failure to disclose.

IT IS SO ORDERED.

Dated: September 8, 2026

KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California